JACKSON AND COMPANY (INC.) *vs.* GREAT AMERICAN
INDEMNITY COMPANY.

SAME *vs.* SAME.

SAME *vs.* SAME.

Suffolk.    January· 4, 1933. — March 29, 1933.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Insurance*, Burglary: waiver of proof of loss.  *Waiver.*  *Agency*, Scope
of authority. *Corporation*, Officers and agents. *Evidence*, Com-
petency, Of authority of agent.

At the trial of an action against an insurance company upon a policy of
burglary insurance, the issue was whether the defendant had waived
a provision of the policy, requiring proof of loss within sixty days
from the date of the loss, by its absolute refusal within that period to
pay the loss, which refusal was not placed on the ground of the failure
of the plaintiff to make such proof, but was placed on other grounds.
There was evidence that one appointed agent of the defendant under
G. L. (Ter. Ed.) c. 175, § 163, upon receiving notice of the loss, notified
an attorney in the defendant's Boston office; and that the attorney
had been seen at that office supervising burglary claims and investi-
gating settlements of them.  A letter head of the defendant admitted
in evidence bore the words "Branch Office . . . Claim Department
. . . [name of the attorney] Attorney."  The trial judge excluded a
letter from the attorney to the agent on the defendant's letter head
stating that the defendant must refuse to pay the loss on the ground
that it was not covered by the policy, a letter from the agent to the
plaintiff quoting the attorney's letter and stating that the policy was
uncollectible, a letter from the plaintiff's attorney to the defendant at
its main office, which had been transmitted to the defendant's at-
torney at Boston with a notation by the defendant's general counsel
"Herewith self explanatory communication for your attention," and
evidence of conversations with the defendant's attorney and of certain
of his activities in adjusting and paying claims.  The defendant's at-
torney, called by the plaintiff, testified that he communicated with
the defendant's main office about the matter and told the defendant's
representatives there that he had refused payment of the loss; and
that "they never repudiated the statement that we had turned the
loss down for various reasons."  One of the terms of the policy was
that no provision or condition thereof "shall be waived or altered
except by endorsement attached hereto, signed by" one of certain
designated officers, of whom the defendant's attorney was not one.

There did not appear to have been any such indorsement. *Held,* that

(1) If the defendant's attorney was acting within the scope of his authority, there was an absolute refusal by the defendant to pay the loss which was not placed on the ground of failure of the plaintiff to make proof of loss, and consequently a waiver by the defendant of the requirement of the policy as to such proof;

(2) The letter of the defendant's attorney to its agent, and the letter of the agent to the plaintiff, taken together, should have been admitted, since they showed that the attorney was acting within the scope of his authority;

(3) The letter from the plaintiff's attorney to the defendant's main office, with the notation thereon, should have been admitted in evidence, because it had corroborative value;

(4) It was error to exclude the evidence as to certain of the activities of the defendant's attorney;

(5) The plaintiff was not bound by the testimony of the defendant's attorney; and the jury properly might believe such parts of it as were favorable to the plaintiff and disbelieve parts unfavorable to him;

(6) A finding was warranted that the defendant's attorney was acting within the scope of his authority in refusing to pay the policy.

It was proper for the judge at the trial above described to admit a portion of a letter, offered by the plaintiff, from the plaintiff's counsel to the defendant which acknowledged receipt of a letter from the defendant and stated that counsel expected from the defendant "a statement of your intentions in this matter" within a certain time; and to exclude portions of the letter stating that the plaintiff was "indignant" that payment of the policy had not been made, that the plaintiff would prefer to have the matter "go directly into court" if there was to be delay in payment, and that payment should be forthcoming at once because "this loss is so clearly within the terms of the policy."

THREE ACTIONS OF CONTRACT. Writs dated, respectively, July 12, 14 and 15, 1930.

The actions were tried together in the Superior Court before *Morton,* J. Material evidence is stated in the opinion. The witness Mr. Sullivan was called by the plaintiff.

Exhibit F mentioned in the opinion was a letter from the plaintiff's counsel to the defendant under date of January 24, 1930, as follows:

"We acknowledge receipt of your letter of January 20th signed by your Mr. J. J. McGrath. We shall expect from you within a week a statement of your intentions in this matter, and ask you to oblige us within that time.

"Our client is indignant that payment under the policy has not been made to cover its losses and feels that it would

prefer to have this matter go directly into Court, if you are going to delay it for any length of time.

"It seems to us that this loss is so clearly within the terms of the policy, that payment should be forthcoming without any further delay.

"We await your communication."

The judge allowed only the first paragraph of this letter to be read to the jury, excluding the remainder, to which ruling the plaintiff saved an exception.

The judge ordered a verdict for the defendant in each action. The plaintiff alleged exceptions.

The cases were submitted on briefs.

*Lee M. Friedman & F. L. Kozol,* for the plaintiff.

*R. Gallagher, N. Fermoyle, & G. E. Bruen,* for the defendant.

WAIT, J. The defendant issued to the plaintiff a policy of insurance against loss from burglary. Losses occurred in the intervals between the closing of the plaintiff's store at night on October 29, 1929, December 14, 1929, and December 17, 1929, and the opening on the following business days. Notices of the losses were received by the defendant, and investigations were made, to some extent, on the days of receipt of notice. The policy required as a condition of liability that "Affirmative proof of loss or damage under oath on forms provided by the Company must be furnished to the Company at its Home Office in New York, New York, within sixty days from the date of the discovery of such loss or damage." No such proofs were so filed before April 5, 1930. The defendant has made no payment. The plaintiff has brought these three actions at law; and contends that there was error, at the trial, in excluding evidence offered by the plaintiff, and in directing verdicts for the defendant.

It is not disputed that by settled law failure to file the required proofs of loss within the time limited bars recovery unless the failure is excused or has been waived. *Paulauskas* v. *Fireman's Fund Ins. Co.* 254 Mass. 1. *Shapiro* v. *Security Ins. Co.* 256 Mass. 358, 365, and cases cited. *Holich* v. *Globe & Rutgers Fire Ins. Co.* 272 Mass. 587.

*Ray* v. *Fidelity & Deposit Co. of Maryland,* 275 Mass. 184. *Friedman* v. *Orient Ins. Co.* 278 Mass. 596. At the trial the plaintiff sought to introduce evidence that in early January, 1930, before the expiration of sixty days after the December losses, the defendant definitely refused to pay the losses, and thereby waived the requirement of proofs of loss and excused performance of it. It offered testimony, which was excluded, that, at the examination of the premises, a person then representing the defendant told representatives of the plaintiff: "You do as we tell you to do. We will take charge and you follow our instructions and do nothing except what we tell you." It offered a letter dated January 7, 1930, to the agency, Russell, Fairfield and Ellis, with whom the plaintiff had dealt in obtaining the insurance and which, by appointment filed with the division of insurance pursuant to G. L. (Ter. Ed.) c. 175, § 163, had been made an agent for the defendant in Massachusetts, written by one Mr. Sullivan, apparently on behalf of the defendant, stating that "we" had failed to find that the losses were losses covered by the policy, and "We must, therefore, respectfully decline to make any payment on any of these losses"; and another letter from Russell, Fairfield and Ellis to the plaintiff, dated January 10, 1930, which stated receipt from the defendant of the letter written by Mr. Sullivan, quoted its language in full, and announced that the plaintiff's claims were uncollectible. Both were excluded. There was evidence that on January 16, 1930, attorneys for the plaintiff wrote to the defendant at both its New York and Boston offices. The letter sent to New York was transmitted to Mr. Sullivan at Boston with a sheet signed by the general counsel of the defendant at New York with the words: "Herewith self explanatory communication for your attention." Both bore stamps indicating receipt by the defendant, and were produced from Mr. Sullivan's files at the Boston office. These letters were offered and excluded. A letter dated January 20, 1930, on the letter head of the defendant signed by J. J. McGrath, addressed to attorneys for the plaintiff, was admitted in evidence. It acknowledged

receipt of their letter of January 16, and promised "our necessary attention." McGrath testified that he was employed by the defendant as assistant to Mr. Sullivan, and that he took instructions from Mr. Sullivan in the Jackson and Company (Inc.) matter. The letter head bore the words: "Branch Office 89 Broad Street, Boston, Mass. D. B. Libbey, Manager," and, at one side: "Claim Department Arthur V. Sullivan Attorney." There was evidence that Mr. Sullivan was seen at the defendant's office in Boston supervising burglary claims, and investigating settlements of them; and that Ellis of Russell, Fairfield and Ellis talked over the plaintiff's claims with Mr. Sullivan. The court excluded what took place between Ellis and Mr. Sullivan; and questions in regard to who was doing the business of the defendant with reference to these claims, whether Mr. Sullivan's signature was seen in connection with business of the defendant, and what was said by Mr. Sullivan to Ellis with regard to probability of payment. Evidence also was excluded in respect to whether Mr. Sullivan, when adjusting and paying claims under instructions from New York, did so upon instructions received from the general counsel of the defendant who had signed the excluded letter of transmission of January, 1930. The ground of exclusion was the lack of proof of authority to bind the defendant by what was done by Mr. Sullivan and Russell, Fairfield and Ellis. The ground for directing verdicts for the defendant was the failure to furnish proofs of loss within the time specified by the policy.

The policy in question in terms set out that: "No provision or condition of this Policy shall be waived or altered except by endorsement attached hereto, signed by the President, a Vice-President, the Secretary, or an Assistant Secretary of the Company, nor shall notice to any agent, or knowledge possessed by any agent or by any other person, be held to effect a waiver or change in any part of this Policy . . . ." No such indorsement appears. Such a provision is notice to the assured of lack of authority in others than those named. It is to be borne in mind in considering whether at any moment there may be ostensible

authority in others. See *Larner* v. *Massachusetts Bonding & Ins. Co.* 238 Mass. 80, 82. The law is clear that the insurer may waive the provision, or by its conduct may preclude itself from relying upon it as a defence. *Lamontagne* v. *Standard Life & Accident Ins. Co.* 226 Mass. 161. Whether it has done so is matter of fact. The principle is recognized that an absolute refusal to pay a loss excuses performance of conditions for giving notice and making proofs of claim which otherwise would be imperative, unless the refusal is based upon the failure of notice or proofs. *Vasaris* v. *National Liberty Ins. Co. of America,* 272 Mass. 62, 66, and cases cited; *S. C.* 280 Mass. 499. *Shapiro* v. *Security Ins. Co.* 256 Mass. 358, 366. *Wheelock* v. *Postal Telegraph Cable Co.* 197 Mass. 119, 124. Here if, on January 10, 1930, there was a refusal to pay based on other grounds than lack of notice or proofs of loss, it could be found that proofs of loss were waived. Manifestly there was such refusal if Mr. Sullivan was authorized to refuse. His act of refusal on the ground that the losses were not losses covered by the policy, if binding, was in law a waiver of the requirement of proofs of loss, and no special authority in him to waive conditions of the policy was necessary. The insurer acting, as it could act, through him could refuse to pay. If it did, the result follows. Consequently evidence was admissible to show an absolute refusal to pay. It was admitted that the defendant had notice of the several losses. There was evidence that, on receiving notice, Russell, Fairfield and Ellis, of record agents in Massachusetts (*Green* v. *Star Fire Ins. Co.* 190 Mass. 586, 595) for the insurer, notified Mr. Sullivan. He, or some one for him, examined the premises. He communicated with New York, or so it could be found. He testified that he sent a report to the home office, though he did not recall whether to the "Home Office, Claim Department" or to "Mr. Carr, the Burglary Man in the Home Office"; that at one time he told them he had refused to make any payment of this loss, and that "they never repudiated the statement that we had turned the loss down for various reasons." This evi-

dence was admissible as tending to show original authority
to deny liability or a subsequent ratification by the defend-
ant of a denial of liability made by him on its behalf.   On
January 10, Russell, Fairfield and Ellis wrote the plaintiff
in regard to the claim.   That letter was admissible, for it
purported to speak for the insurer: "I am today in receipt
of a letter from the Great American Indemnity Company
in which they state as follows" etc.; it set out the words
of the statement alleged to be of the company insurer, and
it could be found to contain a refusal.   The letter of Jan-
uary 7 was admissible: for it was the original quoted in
the letter of the tenth.   It was upon the defendant's letter
head, it was signed by the man held out on the letter head
as in charge of its claim department at Boston, it stated
"We" must decline to pay the losses for the reason that
they are not within the losses covered by the policy.   Taken
together they tend to show a refusal by the company; that
Mr. Sullivan, who signed the earlier one, was acting for the
insurer, and was regarded by the insurer's agent in Massa-
chusetts as empowered to speak for it.   The letters dated
January 16 were admissible in corroboration, for they bore
the defendant's stamps of receipt, and the leaf affixed by
the general counsel in New York transmitting to Sullivan
the one addressed to New York, tended to show authority
in Mr. Sullivan to deal with the matter and to act for the
defendant.   *Shapiro* v. *Security Ins. Co.* 256 Mass. 358,
366.   They were circumstantial, but possessed evidentiary
value, especially in view of the admitted evidence with
regard to Mr. Sullivan's activities in Boston.   They were
produced by the defendant.   On the issue of refusal, Mr.
Sullivan's ostensible authority was in question as well as
his authority intentionally conferred by the defendant.
Evidence unknown at the time action was taken of course
would not show ostensible authority justifying the course of
the plaintiff; but when known at a later time, it could be
admitted to corroborate what was earlier known.   The
plaintiff was not bound by Mr. Sullivan's testimony.
Jurors might well refuse to give it full credence.   They

could accept his assertion that he communicated with New York, while they put no faith in his statement with regard to the time of communication. See *Marquandt* v. *Boston Young Women's Christian Association,* 282 Mass. 28, 31. Without discussing it in detail, we think the evidence of Mr. Sullivan's doings which was excluded should have been admitted. No exception is noted to the exclusion of Mr. Sullivan's statement at the examination. We do not pass upon the exclusion, and we disregard the evidence. The ruling limiting the admission of the letter Exhibit F was correct.

The policy covered only losses where physical signs of forcible entry to the premises appeared. At the trial the existence of such signs was disputed. The question was for the jury. Compare *Shulkin* v. *Travelers Indemnity Co.* 267 Mass. 160.

Verdicts for the defendant could not be directed properly unless no legal excuse was shown for failing to file the proofs of claim within sixty days of the losses. In the first case more than sixty days had elapsed before January 10, 1930. No evidence was offered which would support a finding of waiver or refusal within those sixty days. The verdict in that case was ordered correctly. In the other cases evidence properly admissible was excluded, which, if admitted, would have entitled the plaintiff to go to the jury, and might have led to verdicts in its favor. It follows that in the first case the order must be, exceptions overruled; in the other cases, exceptions sustained.

*So ordered.*