ELIZABETH M. SHEEHAN, executrix, *vs.* THE COMMERCIAL
TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA.

Suffolk.  March 11, 1932. — July 3, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, FIELD, DONAHUE, &
LUMMUS, JJ.

*Insurance,* Construction of policy, Waiver, Accident. *Waiver. Estoppel.
Contract,* Construction, Performance and breach. *Practice, Civil,*
Report, Judgment ordered by Supreme Judicial Court. *Evidence,*
Presumptions and burden of proof. *Autopsy. Words,* "Family."

One, insured under a policy of accident insurance, payable, in case of
death, to his estate, which contained a provision, among others, that
the insurer should have "the right and opportunity to be present in
any case at an autopsy performed on the body of . . . [the insured]
under the direction of a public officer, or by the authority or consent
of his beneficiary or family," died four days after the policy was
issued.  His will was filed for probate two days later.  Fourteen days
thereafter the insurer was given a sufficient notice of the death and
almost three months after his death received proper proofs of loss
and a statement from a medical examiner that he performed a post-
mortem examination on the body of the insured, but not stating the date
or the circumstances thereof.  It had been performed three days after
the insured's death.  The evidence did not warrant a finding that it
was not performed at the request of the next of kin of the insured.
It did not appear that he left a widow.  The insurer made no request
for an autopsy.  A month and ten days after receiving the state-
ment from the medical examiner, the insurer wrote the attorney
for one who had been appointed executor of the will a letter stating
that the insurer's board of directors had "carefully considered the
proof of loss . . . and . . . rejected the claim made . . . by the
estate of" the insured and that "The claim is rejected upon the
ground that . . . [the] death was not caused by accidental means,
or any means covered by" the instrument of insurance.  At the trial
of an action by the executor upon the policy, the defendant insisted
upon a defence of noncompliance with the provision of the policy
above quoted, there was evidence on that issue and the defendant
made and the judge refused to grant requests for rulings relating
thereto.  There was no evidence that the plaintiff relied to his prej-
udice upon the defendant's letter or that the defendant had any
notice of the autopsy previous to receiving the statement of the medi-
cal examiner.  There was a verdict for the plaintiff.  Upon a report
by the trial judge, it was *held,* that

(1) The quoted provision of the policy relating to autopsy, while
it was not to be interpreted as requiring the impossible or the un-

reasonable, was proper as affording protection to the insurer against fraudulent claims and also against claims which, although made in good faith, were not valid;

(2) Compliance with such provision was a condition precedent to the plaintiff's right to require payment of the loss, and the burden of proof of compliance, excuse for noncompliance, or waiver of a defence based upon noncompliance was on the plaintiff;

(3) There was no foundation in the evidence for a finding that the defendant was estopped to insist upon the defence of noncompliance with the condition relating to autopsy;

(4) There was nothing in the defendant's letter inconsistent with an intention on the part of the defendant to assert any available ground of defence: the mere statement of one ground for denying liability without explanatory words or circumstances did not warrant the inference of an intention to relinquish other defences;

(5) A finding, that the defendant had waived the defence of noncompliance of the provision of the policy relating to autopsy, was not warranted;

(6) The word "family" in the quoted provision as to autopsy must be interpreted as applying to a person who, as surviving wife or husband, or as next of kin, had the right of possession of the insured's body and, therefore, the right to authorize or consent to the performance of an autopsy;

(7) The plaintiff, to establish that the autopsy held was not within the terms of the policy, was required to prove that it was not performed either under the direction of a public officer or by the authority or consent of a member of the family of the insured;

(8) The evidence did not warrant such a finding;

(9) There was no evidence that the defendant had a reasonable opportunity to be present at the autopsy;

(10) A finding was not warranted that it was impossible or even unreasonable for the defendant to insist upon its right and opportunity to be present at the autopsy which was held;

(11) The mere fact that no administrator or executor had been appointed when the autopsy was performed was not enough to excuse compliance with the provision in the policy as to autopsy on the ground that such compliance was impossible or an unreasonable requirement; it was incumbent upon the persons interested in the policy to make reasonable efforts to see that its requirements were complied with;

(12) A finding was not warranted that there was compliance with the provision as to autopsy.

The judge before whom the action above described was tried submitted to the jury only the question, whether the insured died by accidental means, refusing to submit other issues and to make rulings requested by the defendant relative thereto. The jury found for the plaintiff, and the judge reported the action for determination by this court upon the following terms: "If my rulings and charge were correct, then judgment is to be entered on the verdict; if the case should have been submitted to the jury on the question whether or not upon all

the evidence the defendant had waived such defences as were not submitted to the jury, then a new trial is to be had upon the issue of waiver first, and if the jury find no waiver by the defendant then only upon such additional defences as were not waived but should have been submitted; the findings of the jury with respect to the issue submitted to them in the jury trial already had to stand." It appearing that there was no evidence to warrant a finding of compliance by the plaintiff with the provision of the policy relating to autopsy, or that the defendant was barred from relying on the defence of noncompliance with such provision, or that the plaintiff was excused from complying therewith, it was *held*, that

(1) The plaintiff had an opportunity to present his case fully in the trial court upon the questions above decided, and it was not to be assumed that he did not do so;

(2) This court therefore had before it all the facts necessary for determining the question in dispute and it was unnecessary to decide whether the judge was in error in refusing to rule as requested by the defendant;

(3) Judgment was ordered for the defendant under G. L. (Ter. Ed.) c. 231, § 124.

CONTRACT OR TORT. Writ dated December 15, 1927.

One paragraph of the defendant's answer was as follows: "And further answering and specifying the defendant says that it was not given the right and an opportunity to make an autopsy of the deceased, nor the right and opportunity to be present when the autopsy was performed on the body of the deceased under the direction of a public officer or by the consent or authority of his beneficiary or family, all as required by § 10 of the double benefit certificate and insurance policy upon which said action is based."

In the Superior Court, the action was tried before *Brown*, J. Material evidence is described in the opinion.

At the close of the evidence, the defendant asked, among others, for the following rulings:

"12. If you find that the defendant association was not given 'the right and opportunity to be present in any case at an autopsy performed on the body of Dr. Pittinger under the direction of a public officer, or by authority or consent of his beneficiary or family,' then you will find for the defendant.

"13. The double benefit certificate (plaintiff's Exhibit 1), having been issued by the defendant association and ac-

cepted by Dr. Pittinger, the insured, upon said express limitations and conditions, then if you find that item or condition 10 in said certificate was not complied with, your finding must be for the defendant.

"14. The plaintiff has failed to sustain the burden of proving compliance with condition or art. 10 of the certificate of membership (plaintiff's Exhibit 1) and, therefore, the jury must find for the defendant."

The requests were refused, and the sole issue described in the opinion was submitted to the jury, who found for the plaintiff in the sum of $11,715. The judge reported the action for determination by this court, stating the terms quoted in the opinion.

The case was argued at the bar in March, 1932, before *Rugg*, C.J., *Crosby*, *Sanderson*, & *Field*, JJ., and after the death of *Sanderson*, J., was submitted on briefs to all the Justices.

*R. G. Wilson, Jr.*, for the defendant.

*R. Gallagher*, (*E. T. Doherty & G. Bolton* with him,) for the plaintiff.

FIELD, J. The executrix of the will of Lee R. Pittinger, late of Boston, who died July 10, 1927, brought this action against The Commercial Travelers Mutual Accident Association to recover for the death of the insured by accidental means under a policy of accident insurance, admittedly issued by the defendant on July 6, 1927, payable in case of loss of life to his estate.

A copy of the policy is set forth in the record. The policy is entitled a "Double Benefit Certificate Assessment System," and provides that "This Certificate insures upon the conditions therein named, against loss by accidental means of life, limb, sight and time," and certifies "that in consideration of the membership fee paid and the statements contained in his application for membership, a copy of which is hereto annexed Lee Ross Pittinger . . . is hereby accepted as a member of this Association, and said Association does hereby insure him, during the continuance of his membership, subject to all conditions and limitations contained in this Certificate of Membership" against loss

thereinafter set forth, including loss of life, "which is the direct and approximate result of and which is caused solely and exclusively by external violent and accidental means." The policy purports to have been signed and delivered at the defendant's office in Utica, New York.

Among the "conditions" referred to are the following: "7. . . . notice of every death for which claim may be made shall be given within twenty days after such death occurs, to the Secretary of the Association, at its office, No. 70 Genesee Street, Utica, New York, with full particulars of the accident and its results, and such notice when actually received by the Association at its said office within said twenty days, shall be deemed sufficient notice; . . . this Association upon the receipt of such notice will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss . . . . Affirmative proof of loss must be furnished to the Association at its said office in case of claim for loss . . . within ninety days after the date of such loss . . . . 10. This Association shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require, and also the right and opportunity to make an autopsy, in case of death, where it is not forbidden by law, and also the right and opportunity to be present in any case at an autopsy performed on the body of a member under the direction of a public officer, or by the authority or consent of his beneficiary or family. . . . 12. This contract is for all purposes deemed to be executed within, and to be construed in accordance only with the laws of the State of New York. . . . 15. No statement made by the applicant for this insurance, which statement is not incorporated in or endorsed upon this certificate or contained in the application therefore, shall avoid this Certificate or be used in any legal proceeding arising under this Certificate. . . . 18. This Certificate, with the annexed copy of the application therefore, constitutes the only and the entire contract of insurance between this Association and said member."

According to the copy of the policy set forth in the record no "copy of the application therefore" was annexed thereto.

The record, however, sets forth a copy of material portions of an alleged application signed by the insured including question 37 thereof — whether the applicant had "ever had . . . Heart Disease . . ." and numerous other diseases — and the answer "No" to this question.

The record sets forth a copy of a letter to the defendant dated July 26, 1927, giving notice of the death of the insured by accident and proofs of loss bearing dates October 5, and October 6, 1927, "consisting of three sheets bound together, one sheet being on the form furnished by the defendant," another being a letter from a medical examiner for Suffolk County dated October 5, 1927, stating that he performed a post-mortem examination on the body of the insured, but not stating the date or the circumstances thereof, and the third being a certificate of the death of the insured. No question was raised as to the sufficiency of the notice or proofs of loss.

Defence to the action was made on three grounds: (a) that the insured did not die by accidental means, (b) that condition 10 of the policy was not complied with, and (c) that recovery was barred by a false answer to question 37 of the application. The plaintiff contended that the last two defences were waived by the defendant.

The judge refused to rule as requested by the defendant with regard to the defences based upon alleged noncompliance with condition 10 of the policy and the alleged false answer to question 37 of the application, and submitted the case to the jury on the single issue whether the insured died by accidental means. There was a verdict for the plaintiff and the judge reported the case upon the following terms: "if my rulings and charge were correct then judgment is to be entered on the verdict; if the case should have been submitted to the jury on the question whether or not upon all the evidence the defendant had waived such defences as were not submitted to the jury, then a new trial is to be had upon the issue of waiver first, and if the jury find no waiver by the defendant then only upon such additional defences as were not waived but should have been sub-

mitted; the findings of the jury with respect to the issue submitted to them in the jury trial already had to stand."

No question of pleading appears to have been raised at the trial or is reported for our consideration. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384, 385. Nor does the report bring before us for determination any question of error in the trial of the issue submitted to the jury. The questions raised by the judge's charge, which are reported for our decision, are whether other issues should have been submitted to them.

First. The judge was right in not submitting to the jury either the question whether the defence of noncompliance with condition 10 of the policy was waived or the question whether that condition was complied with.

The defence that condition 10 of the policy was not complied with relates only to that part of the condition which provides that the defendant shall have "the right and opportunity to be present in any case at an autopsy performed on the body of a member under the direction of a public officer, or by the authority or consent of his beneficiary or family." This provision was proper as affording protection to the insurer against fraudulent claims and also against claims which, although made in good faith, were not valid, but it is not to be interpreted as requiring the impossible or the unreasonable. *Loesch* v. *Union Casualty & Surety Co.* 176 Mo. 654, 667. See *General Accident Fire & Life Assurance Corp. Ltd.* v. *Savage*, 35 Fed. Rep. (2d) 587, 593; *Johnson* v. *Bankers Mutual Casualty Ins. Co.* 129 Minn. 18; *Wehle* v. *United States Mutual Accident Association*, 153 N. Y. 116, 122; *Tompkins* v. *Pacific Mutual Life Ins. Co.* 53 W. Va. 479, 491; note L. R. A. (1915 D) 1199. See also *Mandell* v. *Fidelity & Casualty Co.* 170 Mass. 173; *Constantino* v. *Massachusetts Accident Co.* 221 Mass. 464, 468; *Wilcox* v. *Massachusetts Protective Association, Inc.* 266 Mass. 230, 236. Compliance with this provision was a condition precedent to the plaintiff's right to require pay-. ment of the loss and the burden of proof of compliance, excuse for noncompliance, or waiver of the defence based upon

noncompliance was on the plaintiff.   See *Swain* v. *Security Live Stock Ins. Co.* 165 Mass. 321, 323; *Rocci* v. *Massachusetts .Accident Co.* 226 Mass. 545, 547, 551; *McCarthy* v. *Rendle*, 230 Mass. 35; *Boston Elevated Railway* v. *Maryland Casualty Co.* 232 Mass. 246; *Cohen* v. *Commercial Casualty Ins. Co.* 277 Mass. 460, 462; *Friedman* v. *Orient Ins. Co.* 278 Mass. 596, 598–599.   Even if, as we do not decide, the policy is to be construed in accordance with the law of New York, no specific statute or decision of New York is referred to in the record or has' been brought to our attention (*Seemann* v. *Eneix*, 272 Mass. 189, 195–196) which requires a different construction of the policy.   There is nothing in *Trippe* v. *Provident Fund Society*, 140 N. Y. 23, referred to by the plaintiff, to indicate that compliance with the provision under consideration would not be held in New York to be a condition precedent to recovery on the policy.   Compare *Wehle* v. *United States Mutual Accident Association*, 153 N. Y. 116.

1. The evidence, in its aspect most favorable to the plaintiff, did not warrant a finding that the defence of noncompliance with condition 10 of the policy was waived by the defendant.

There is no substantial dispute as to the facts in respect to this matter.   It was agreed that the duties of the defendant's secretary and treasurer included taking "full charge of the running of the business for the Association in an executive capacity."   He admitted sending to the plaintiff's attorney a letter dated November 15, 1927, "subsequent to due filing of proofs of loss by the plaintiff," stating that the defendant's board of directors had "carefully considered the Proof of Loss . . . and . . . rejected the claim made . . . by the Estate of Dr. Lee R. Pittinger," and that "The claim is rejected upon the ground that Dr. Pittinger's death was not caused by accidental means, or any means covered by the Certificate of Membership issued to him by this Association."   The defendant's secretary and treasurer testified without contradiction that "the fact that an autopsy had been held, without first notifying the Association" was "considered in rejecting

the claim." We treat the case upon the footing on which it appears to have been tried and which is most favorable to the plaintiff — that no autopsy not referred to in the proof of loss was performed. And it was agreed that no request was made by the defendant for an autopsy.

The defendant did not at the trial waive the defence of noncompliance with condition 10 of the policy, but, on the contrary, as the record shows, insisted upon it. Nor was there evidence of any express agreement before the trial that the defendant would not insist upon this defence. Waiver of the defence of noncompliance with the condition or estoppel to insist upon it resulted, if at all, from the defendant's letter of November 15, 1927, — sent to the plaintiff after it had received the proofs of loss and had considered the fact that an autopsy had been held without notice to the defendant — rejecting the plaintiff's claim on the ground that the death of the insured was not caused "by accidental means, or any means covered by the Certificate."

There was no foundation in the evidence for a finding that the defendant was estopped — by a true or a "promissory" estoppel (see Williston on Contracts, §§ 139, 679, 689, 691–693) — to insist upon noncompliance with condition 10 of the policy as a defence to the action. It did not appear, as would be essential to show estoppel, that the plaintiff relied to her prejudice upon the defendant's letter. This is not shown to be "a case where the plaintiff has been induced to forego doing something which he might have done had he not been lulled into a false belief that nothing more was necessary." *McCord* v. *Masonic Casualty Co.* 201 Mass. 473, 476. See also *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 150. So far as appears the time for compliance with condition 10 had gone by not only before the defendant sent its letter or received proofs of loss containing the reference to an autopsy, but even before it had notice of the death of the insured, and the plaintiff's conduct with respect to an autopsy could not have been influenced thereby. See *Boston Elevated Railway* v. *Maryland Casualty Co.* 232 Mass. 246, 253; *Friedman* v. *Orient Ins. Co.* 278 Mass. 596,

600; *Jackson & Co.* (*Inc.*) v. *Great American Indemnity Co.* 282 Mass. 337, 344. Cases like *Searle* v. *Dwelling House Ins. Co.* 152 Mass. 263, and *Shapiro* v. *Security Ins. Co.* 256 Mass. 358, relied on by the plaintiff, are distinguishable from the case at bar since in those cases there was evidence of conduct of the defendant, before the time for performance of the conditions expired, inducing noncompliance on the part of the plaintiff. See *Brown* v. *Henry*, 172 Mass. 559, 567. So, too, cases like *Trippe* v. *Provident Fund Society*, 140 N. Y. 23, also relied on by the plaintiff, where the defendant's conduct misled the plaintiff to her prejudice in some other respect are distinguishable. See also *Moore* v. *Wildey Casualty Co.* 176 Mass. 418.

Nor would the evidence justify a finding that there was a "waiver" as that term is ordinarily understood. "There can be no waiver of a right unless the right is known and it was intended to surrender it." *Boston Elevated Railway* v. *Maryland Casualty Co.* 232 Mass. 246, 252. There was no evidence, apart from the letter and the testimony of the defendant's secretary and treasurer that "the fact that an autopsy had been held, without first notifying the Association" was "considered in rejecting the claim," that the defendant intended to surrender any right which it had to contest successfully the claim of the plaintiff on the ground of noncompliance with condition 10, and no such intention could have been inferred from this letter and testimony. The defendant did not expressly or by fair implication state in the letter that the ground upon which it then denied liability was the only ground upon which it relied. There was nothing in the letter inconsistent with an intention on the part of the defendant to assert any available ground of defence. Though the letter indicated that the defendant preferred to deny liability on the broad ground that the plaintiff did not die by accidental means, it does not show that the defendant intended to surrender any other defence to the plaintiff's claim. The mere statement of one ground for denying liability without explanatory words or circumstances does not warrant the inference of an intention to relinquish other defences. *Boruszweski*

v. *Middlesex Mutual Assurance Co.* 186 Mass. 589, 591–592.
*Boston Elevated Railway* v. *Maryland Casualty Co.* 232
Mass. 246, 253.   *Shapiro* v. *Security Ins. Co.* 256 Mass.
358, 366–367.   *Friedman* v. *Orient Ins. Co.* 278 Mass. 596.
*Jackson & Co. (Inc.)* v. *Great American Indemnity Co.*
282 Mass. 337.   *Devens* v. *Mechanics & Traders' Ins. Co.* 83
N. Y. 168.   See also *Bates* v. *Cashman,* 230 Mass. 167,
168–169; Williston on Contracts, § 742.   In view of the
lack of evidence of an intention on the part of the defend-
ant to relinquish the defence of noncompliance with con-
dition 10 of the policy, it is not necessary to consider
whether the proof of waiver fails on any other ground.

2. The evidence in its aspect most favorable to the
plaintiff did not warrant a finding that condition 10 of the
policy was complied with or that circumstances excused
compliance therewith.

Apparently it was undisputed that on July 13, 1927, Dr.
Timothy Leary, a medical examiner of Suffolk County,
performed an autopsy, referred to in the proofs of loss, on
the body of the insured — though it is contended that the
autopsy was not an official autopsy and, for that reason,
not within the terms of the policy.   But even if this matter
was in dispute there was no evidence for the consideration
of the jury negativing these facts, and an affirmative find-
ing of compliance with condition 10 of the policy could not
have been made on the ground that there was no such
autopsy.

Nor could compliance with the condition have been
found on the ground that the autopsy, if made, was not
within the terms of the condition.   The evidence did not
warrant a finding that the autopsy, referred to in the proofs
of loss, was not performed "by the authority or consent" of
the "family" of the insured.   The right of possession of a
dead body for the purpose of burial or other lawful disposi-
tion and, consequently, for the purpose of an autopsy,
subject to some limitations in the public interest, is vested,
at least in the absence of a different provision by the de-
ceased, in the surviving husband, wife or next of kin.
*Burney* v. *Children's Hospital,* 169 Mass. 57.   *Streipe* v.

*Liberty Mutual Life Ins. Co.* 243 Ky. 15, 18, and cases cited. Clearly the word "family," in the provision in the policy referring to autopsies, must be interpreted as applying to a person who, as surviving wife or husband, or as next of kin, has the right of possession of the body and, therefore, the right to authorize or consent to the performance of an autopsy. If the insured in this case left no wife and the sister, to whom reference is made in the record, was his nearest kin, the plaintiff, to establish that the autopsy, if made as testified to, was not within the terms of the policy, was required to prove that it was not performed by the authority or consent of the sister. The evidence reported did not justify this conclusion or the more general conclusion that it was not performed by the authority or consent of the family of the insured. It is unnecessary to consider whether the evidence fails in other respects to exclude this autopsy from the terms of the policy.

There was no evidence that the defendant had a reasonable opportunity to be present at the autopsy. Such an opportunity would imply seasonable notice that an autopsy was to be performed. Compare *Wilcox* v. *Massachusetts Protective Association, Inc.* 266 Mass. 230, 236. The provision in the policy, that a notice of death within twenty days after such death occurs is sufficient compliance with the requirement of notice of death, does not justify the conclusion that notice of an autopsy need not be given before the expiration of that period. Such an interpretation in the ordinary case would render nugatory the provision giving to the defendant the right and opportunity to be present at an autopsy. There was no evidence that the defendant had notice that an autopsy was to be performed, or any notice of the death of the insured until after the autopsy had been performed.

A finding was not warranted that it was impossible or even unreasonable for the defendant to have the right and opportunity to be present at the autopsy referred to in the evidence. It did not appear that the presence of a representative of the defendant at such autopsy would be un-

lawful or improper, that autopsy or burial would be delayed by giving the defendant a reasonable opportunity to be present at the autopsy, or that the provisions of the policy were not known to the person named in the will of the insured as executrix or to the persons who, as legatees or next of kin, might naturally expect to share in the proceeds of the policy payable to the estate of the insured. It was agreed that the will of the insured was filed for probate on July 12, 1927. Its terms, therefore, could have been known before the autopsy if the autopsy was performed on July 13, 1927. The mere fact that no administrator or executor had been appointed was not enough to excuse compliance with the agreement, deliberately entered into by the insured, that the insurer should have the right and opportunity to be present at an autopsy, on the ground that such compliance was impossible or an unreasonable requirement. If this fact were sufficient to excuse compliance with this provision of the policy such a provision would be ineffective in almost every case where a policy was payable upon the death of the insured to his estate. It was incumbent upon the persons interested in the policy to make reasonable efforts to see that the requirements thereof were complied with. See *Matthews* v. *American Central Ins. Co.* 154 N. Y. 449, 458–459, 463. See also *Taylor* v. *Woburn*, 130 Mass. 494, 497–498; *Maskas* v. *North American Accident Ins. Co.* 279 Mass. 523, 527–528. The record does not require us to consider at large what evidence would be sufficient to warrant a finding that condition 10 was complied with or noncompliance therewith excused.

Second. It is unnecessary to determine whether any question should have been submitted to the jury with reference to the defence based on the alleged false answer to question 37 of the application. Even if, as to this defence standing by itself, there was a question or questions for the jury, findings thereon would have been of no effect in view of our decision with reference to the defence based on noncompliance with condition 10 of the policy.

Third. Judgment should be entered for the defendant. The plaintiff had an opportunity to present her case fully

in the trial court upon the questions decided by us and it is not to be assumed that she did not do so. Our decision of these questions is conclusive against the plaintiff's right to maintain the action. There is, therefore, no occasion, in accordance with the terms of the report, for the submission of any issue to a jury since this court "has before it all the facts necessary for determining the question in dispute." G. L. (Ter. Ed.) c. 231, § 124. It is unnecessary to decide whether the judge was in error in refusing to rule as requested by the defendant.

*Judgment for the defendant.*