Gillen, J.
This is an action of contract under a policy of insurance against damage by theft for alleged damage to the plaintiff’s automobile as a result of a theft on July 6, 1938.
The defendant’s answer to the plaintiff’s declaration is a general denial, and further answering, the defendant especially sets forth the following:
“1. That the damage to the automobile as alleged in the plaintiff’s declaration, was caused directly or indirectly by riot, strike or civil commotion, and that, under the terms of the policy in question, the defendant is not held liable for loss or damage caused directly or indirectly by said riot, strike or civil commotion.
“2. That the policy in question requires that the assured file a Proof of Loss within sixty (60) days after the loss or damage, stating, under oath, among other *315 things, the sound value of the automobile alleged to have been damaged, and that the plaintiff has failed to comply with the requirements of said policy in that respect.
“3. That the alleged policy provides that no suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity, unless the assured shall have fully complied with all the foregoing requirements mentioned in the said policy, and the defendant says that the plaintiff has not fulfilled all the requirements of said policy which would entitle him to recover. And the defendant, therefore, does not owe the plaintiff anything as alleged or otherwise.”
At the trial there was evidence tending to show, according to the testimony of the plaintiff, that the plaintiff bought in 1934 a Chevrolet automobile on time payments from a dealer in New Bedford and received a certificate of insurance against theft, robbery and pilferage, issued under an open policy of insurance of the defendant; that at about 12:30 A. M. on July 6, 1938, while said insurance was in force, the plaintiff was putting his car away in his private garage, three hundred feet back from the street on which he lived, and, as he got out of the ear and was about to close and leave the garage, a man pointed a pistol at him and three (3) other men assaulted and beat him. There was no one else present. Then they threw him into his car, drove him to a neighboring town, and threw him out of the car. Two weeks later he found the car in a garage in still another town in a damaged condition. All four of these men were strangers to him. There was a strike going on at the garage of the Pacific Oil Company of its employees and he was business agent of the union, and shortly before he had left the picket line and had left for home.
Plaintiff offered in evidence a certificate of insurance. The certificate of insurance provided:
*316 “This company shall not be liable for loss or damage (b) caused directly or indirectly by invasion, insurrection, riot, civil war or commotion, military, naval or usurped power, or by order of any civil authority.”
“Pboop op Loss. Within sixty (60) days after loss or damage, unless such time is extended in writing by this Company, the Assured shall render a statement to this Company, signed and sworn to by the Assured, stating' the place, time and cause of the loss or damage, the interest of the Assured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon, and all other insurance, whether valid and/or collectible or not, covering said property; . . .”
“Suit Against Company: No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the requirements of the policy.”
“Payment op Loss : This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for: and the loss shall in no event become payable until sixty (60) days after the notice, ascertainment, estimate and verified proof of loss herein required have been received by this Company, and if appraisal is demanded, then, not until sixty days after an award has been made by the appraisers.”
The plaintiff further testified that on July 6th he entered the hospital and remained there until the afternoon of July 31th, when he went home; that about the middle or end of July, a representative of the local insurance agency representing the defendant came and saw him; that on September 1st, the plaintiff signed and swore to a written statement which contained everything that the Proof of Loss required, excepting the statement of the sound value of the car, and included a sworn statement that “the cost *317 of repairing said damage is $92.00, plus a $10.00 towing charge” and that “the encumbrances on the property are conditional sales notes due, amounting to $350.00.” This written statement was sent to the defendant and received by it on September 3rd. On September 14th the plaintiff signed and swore to a supplementary written statement, containing the assertion that the sound value of the car was $350.00. This supplementary statement was received by the defendant on September 17th.
On August 1st, counsel for the plaintiff wrote to the defendant, making claim on behalf of the plaintiff under the certificate of insurance. On August 19th defendant sent said counsel the following letter:
“August 19th, 1938
B&S File 92186
Roewer and Reel
20 Pemberton Square
Boston, Mass.
Be: B&S #395246 — Oswald F. Crockford and David’s Inc. Theft — July 5th, 1938.
Gentlemen:
Your letter of August 1st in connection with the above-captioned matter has not received earlier attention, owing to the fact of our being without a report from our field representative.
Now that we have received information from that source, it appears from his investigation that the damage to your client’s car was■ the direct result of a strike or riot, and as such is expressly excluded under the terms and conditions of the insurance policy. May we ask that you review these conditions, and we think you will agree that our position is correct under the circumstances.
*318 In writing you at this time, we are doing so with a strict reservation of all our lights in the matter.
Yours very truly,
BANKERS & SHIPPERS INS. CO.
W. H. PONSFOKD

Asst. Manager Auto Loss Dept.

WHPrMK
C/C T.W. Adams”
The defendant has not made any payment on said claim. The plaintiff introduced evidence of his damage.
At the close of the trial and before the final argument, the defendant seasonably made the following requests for rulings
“1. There is no evidence to warrant a finding for the defendant.
2. The court is required to find that the open policy relied upon by the plaintiff provides, under its general conditions :
‘PROPERTY EXCLUDED, WAR, RIOT, CIVIL COMMOTION, ETC. (b) Caused directly or indirectly by ........ riot ......... or civil commotion’.
3. A recognized definition of the Common Law Riot is: ‘To disturb another in the enjoyment of a lawful right is a trespass and if done by numbers of three or more persons unlawfully combined the said act is a riot’. See: Mass. Digest Annotated Volume 17, Page 73. Another Common Law Rule defines riot as follows:
‘A riot is a tumultuous disturbance of the peace by three persons or more assembled together of their own authority and intent mutually to assist each other against others who shall oppose them in the execution of some enterprise of a private nature, and afterwards actually executing it in a violent and turbulent manner to the terror of the people, whether the act intended was of itself lawful or unlawful’. Com. v. Porter, 1 Gray 476, followed in Commonwealth v. Runnes, 10 Mass. 518, Com. v. Berry, 5 Gray 93, 16 Bur. 383, 18 Bur. 892, Com. v. Gibson, 84 Mass. (2 Allen) 150.
4. On the plaintiff’s own statement, the loss or damage complained of resulted directly or indirectly from a *319 riot or civil commotion, and the finding should be for the defendant. See 227 N. Y. S. 777, Luckett-Wake-Tobacco Co. v. Globe & Rutgers Fire Ins. Co., 171 Fed. 147.
5. The said open policy, upon which the plaintiff relies, further required ‘PROOF OF LOSS: Within 60 days after loss or damage, unless such time is extended in writing by this company, signed and sworn to by the assured, stating the place, time and cause of the loss or damage, the interest of the assured and of all others in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon, and all other insurance, whether valid or collectible or not, covering said property; . . . ’
6. The plaintiff is not entitled to recover because he has not complied fully with the requirements relative to the Proof of Loss set forth in the general conditions of the open policy relied upon by the plaintiff.
7. No sufficient Proof of Loss was filed prior to bringing this suit and the plaintiff is not entitled to recover.
8. The general conditions of the open policy relied upon by the plaintiff provide: ‘SUIT AGAINST COMPANY : No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity unless the assured shall have fully complied with all the requirements of the policy’.
9. Therefore, the plaintiff cannot recover and finding should be for the defendant.
9. As a matter of law, the Court should find the following facts:
That the loss alleged by the plaintiff occurred on July 6, 1938; that the alleged Proof of Loss is dated September 1, 1938, and was received by the attorney for the defendant on September 3,1938; that the supplementary affidavit of Proof of Loss is dated September 14, 1938, and was received by the defendant on September 16,1938. (more than sixty days after the alleged loss.)
10. Based on the documentary evidence and the plaintiff’s testimony, the plaintiff is not entitled to recover.
11. The rule relating to notices of the election of the insurance company to ,rely upon an exclusion did not apply *320 in this case because the certificate upon which the plaintiff relies included the exclusion relied upon.
12. A theft policy does not cover damage resulting from riot.
13. There, is no evidence introduced as to how the alleged damage was caused and finding should be for the defendant”.
The Trial Judge made the following decision:
“On June 11, 1938, the plaintiff bought a 1934 Chevrolet automobile on time payments from a dealer in New Bedford and received a certificate of insurance against theft, robbery and pilferage issued under an open policy of insurance of the defendant.
“At about 12:30 o’clock A. M., July 6, 1938, while said insurance was in force, the plaintiff was putting this car away in his private garage, three hundred feet back from the street on which he lived. As he got out of the car and was about to close and leave the g’arage, a man pointed a pistol in his face and 3 other men assaulted and beat him. There was no evidence that they made any noise in doing this. There was no one else present. Then they threw him into his ear, drove into a neighboring town and threw him out of the car. Two weeks later, he found the car in a garage in still another town in a damaged condition. All 4 of these men were strangers to him. There was a strike of employees going on at the time in a garage of the Pacific Oil Co. and as business agent he had been active in that strike.
“The certificate of insurance provided that the plaintiff should within 60 days after the loss or damage, render to the defendant a signed and sworn statement in writing, stating the place, time and cause of the loss or damage, the interest of the assured and all other persons in the property, the sound value thereof and the amount of loss or damage thereto, all encumbrances thereon and all other insurance covering said property.
*321 “The plaintiff, on July 6th, entered a hospital and remained there until the afternoon of July 11th, when he went home. About the middle or end of July, a representative of the local insurance agency representing the defendant came and saw him; on September 1st, the plaintiff signed and swore to a written statement which contained all the statements referred to in the preceding paragraph, except one referring to the sound value of the car. This written statement was sent to the defendant and received by it on September 3rd. On September 14th plaintiff signed and swore to a supplementary written statement containing the assertion that the sound value of the car was $350.00. This supplementary statement was received by the defendant on September 17 th.
“The defendant has refused to pay the plaintiff for the damage to his car, and this action is to recover therefor. The defense is that no proper proof of loss was seasonably filed, and that the damage was the result of a riot within the meaning of the word as used in the following portion of certificate of insurance:
‘This company shall not be liable for loss or damage (b) caused directly or indirectly by invasion, insurrection, riot, civil commotion, military, naval or usurped power, or by order of any civil authority’.
“On August 1, counsel for the plaintiff wrote to the defendant, making claim on behalf of the plaintiff under the certificate of insurance.” On August 19th the defendant sent said counsel the letter appearing supra.
“I construe this letter as an absolute refusal to pay and consequently as excusing the plaintiff from filing a proof of loss within 60 days from July 6th, Jackson & Co. v. Great American Indemnity Co., 282 Mass. 337, 342, even though the proof of loss on September 3rd, supplemented on September 17th, would seem to have been seasonably filed. *322 Campbell v. Charter Oak Fire and Marine Insurance Co., 10 Allen, 213, 219, Traiser v. Commercial Travellers’ Eastern Accident Association, 202 Mass. 292, 295.
“I find that the men who assaulted the plaintiff and stole his car were actuated by ill-will toward the plaintiff arising out of the strike at the garage of Pacific Oil Company. I can think of no other rational explanation of this occurrence. They stole the car and then later abandoned it. I infer that they caused the damage that was done to it.
“The defendant has presented 13 requests for ruling. No. 1 I deny, assuming that the last word there was meant to be ‘plaintiff’. Nos. 2, 5, 9 are requests for finding of fact and I decline to pass expressly upon them. No. 3 I grant, and of the two definitions of riot therein contained, I accept the second. Instructing myself accordingly, I find that there was no riot. Nos. 4, 6, 7, 8,10 and 13 I deny. No. 12 I grant, but I find no riot. No. 11 I do not pass upon as I am not deciding this case on the ground that the rule of the insurance commissioner applies to the case. The 9 requests presented by the plaintiff are not passed upon, none of them dealing with the question of damages.
“I find for the plaintiff in the sum of $150.00 . . .
“The defendant, claiming to be aggrieved by the ruling and the refusals to rule as requested, I hereby report the same to the Appellate Division for determination.”
In the main, the defendant urges (a) that the damage was caused directly or indirectly by riot and (b) that the plaintiff did not comply with the requirements of the policy by filing a proof of loss within sixty days after the loss or damage and that there was no waiver of this requirement by the defendant.
In support of (a) the defendant stresses Comm. v. Runnels, et als., 10 Mass. 518; and especially that portion of the opinion that “To, disturb another in the enjoyment of a law *323 ful right is a trespass and if it is done by numbers unlawfully combined the same act is a riot,” although the language used in request #3 by the defendant does not follow Com. v. Runnels, 10 Mass. 518 exactly.
In said case the defendants, six in number, were indicted for “ . . . with shouts and huzzas . . . unlawfully, riotously and routously with great noise and tumult”, attempting to seize the ballot boxes at an election in the Salem Town Hall in 1812 while many of the citizens of Essex County were exercising their right of suffrage.
When found guilty the defendants moved that the judgment be arrested.
1. Because the several acts, alleged in the indictment to have been done by the defendants are not alleged to have been done with force and arms.
2. Because they are not alleged to have been done to the terror of the people.
It was also suggested in the argument that the facts stated in the indictment do not technically constitute a riot.
WTiat the court decided here was that the indictment was sufficient, in that the phrase “with force and arms” was contained therein and it was unnecessary to repeat it; and that a riot may exist even if no one is terrified; and if the riot is of this specie it is unnecessary to allege in the indictment the phrase “in terrorem-populi”.
We do not think the court was called upon to say more.
Authority for a proposition of law is not created by ripping a few lines from the opinion.
A conclusion is properly arrived at by weighing the entire opinion in view of the facts passed upon; or as was stated in Swan v. Justices of the Superior Court, 222 Mass. 542 at 545,
*324 “Every opinion must be read in light of the facts then presented. Statements of rules as applicable to that case cannot be taken out of their context and stretched to different circumstances not before the mind of the court”.
Apparently the evidence in Comm. v. Runnels, 10 Mass. 518, would have supported an indictment setting forth a specie of riot that might be described as “in terrorem populi” and it also would have supported an indictment setting forth a specie of riot that was disturbing, tumultuous, and unlawful but in which people might or might not be terrified.
We do not think that every time three or more robbers stealthily, by force, and without tumult take the property of a victim that they are by those acts rioting as well as committing the crime of robbery.
The evidence warranted the conclusion of the trial judge that there was no riot. Russell on Crimes, Vol. 1, sec. 378; Yalenezian v. Boston, 238 Mass. 538 at 543, Comm. v. Frishman, 235 Mass. 449, Comm. v. Gibney, 2 Allen 150 at 152.
Further, by request #3 the defendant presented two definitions of riot and the trial judge adopted the second one. A party has no right to review of rulings granted at his request. Dennis v. Maxfield, 10 Allen 138, 143, Woodman v. Haynes, 289 Mass. 114, 117, 118.
As to (b) we think the letter of August 19, 1938 from the defendant to the plaintiff’s attorney warranted the finding of the trial judge that the defendant had waived the requirement for filing proof of loss. The defendant had definitely refused to pay the claim. Jackson & Co. v. Great American Indemnity Co., 282 Mass. 337 at 342.
We distinguish Sheehan v. Commercial Travelers Mutual Accident Association of America, 283 Mass. 543 stressed by the defendant from the instant case; in that case there was an absence of evidence of the conduct of the defendant be *325 fore the time for performance of the conditions expired; here there was abundant evidence of the activity of the defendant’s representative in behalf of the defendant prior to the expiration of the sixty-day period.
The defendant urges that the declaration in this case should have set up, waiver of the condition precedent of the proof of loss, in view of the fact that the plaintiff relies upon it.
But no question of pleading appears to have been raised at the trial or is reported for our consideration. Sheehan v. Commercial Travelers Mutual Accident Association of America, 283 Mass. 543 at 549.
We have examined all the defendant’s requests for rulings of law and find no error.
Report dismissed.