TOWN OF FREETOWN *vs.* ZONING BOARD OF APPEALS OF DARTMOUTH & another.[1]

No. 90-P-1492.

Bristol. April 7, 1992. - October 15, 1992.

Present: BROWN, FINE, & GILLERMAN, JJ.

*Zoning*, Governmental use. *Municipal Corporations*, By-laws and ordinances. *Waiver. Estoppel. Dump. Greater New Bedford Regional Refuse Management District.*

The Greater New Bedford Regional Refuse Management District, as a body politic and corporate devoted to an essential governmental function, was exempt from the zoning requirements of one of its constituent municipalities. [417-419]

The principles of waiver and estoppel were not applicable to preclude a regional refuse management district, established by statute as a body politic and corporate, from asserting its exemption from the zoning requirements of one of its constituent municipalities. [419-420]

CIVIL ACTION commenced in the Superior Court Department on March 5, 1990.

The case was heard by *Chris Byron*, J.

*Carlton A. Lees*, Town Counsel (*Christopher Trundy* with him) for the plaintiff.

*John A. Birknes, Jr.*, Town Counsel, for Zoning Board of Appeals of Dartmouth.

*Daniel C. Perry* (*Kenneth T. Ainsley* with him) for Greater New Bedford Regional Refuse Management District.

BROWN, J. The Greater New Bedford Regional Refuse Management District (District), established and constituted by St. 1980, c. 352, was to serve the city of New Bedford and the towns of Acushnet, Dartmouth, and Fairhaven. The

---

[1]The Greater New Bedford Regional Refuse Management District.

District is authorized to operate under the provisions of G. L. c. 40, §§ 44A-44K, "and the regional refuse disposal district agreement dated December third, nineteen hundred and seventy-nine" (the District agreement).[2] The agreement specified that the District's sanitary landfill "shall be located in the northeast part of the Town of Dartmouth."

In 1981, the board of zoning appeals for the town of Dartmouth (board) granted the District a special permit, subject to certain conditions,[3] under the Aquifer Protection and Inland Wetlands District provisions of the Dartmouth zoning by-law. On March 21, 1984, the District sought from the board a determination that it had "good cause" within the meaning of G. L. c. 40A, § 9, for not having exercised its rights under the 1981 permit. On December 3, 1986, the board issued a decision that good cause existed and extended the special permit for a year. On November 25, 1987, the District again sought a determination from the board that "good cause" existed, and on February 15, 1990, the board again found that there was such good cause.

On March 5, 1990, the town of Freetown (Freetown), perceiving that it was "an aggrieved abutter," filed a complaint against the District and the board. The complaint alleged, among other things, that the Dartmouth zoning by-law required a variance, not a special permit, for the operation of a sanitary landfill at the site, that the one-year period for the special permit, granted in 1981, had expired, and that the board's "good cause" findings in 1986 and 1990 were unlawful. Count one of the complaint, styled as an appeal pursuant to The Zoning Act, G. L. c. 40A, § 17, sought annulment of the board's decision of February 15, 1990; count two sought

[2]The District was created by inter-municipal agreement among the towns of Dartmouth, Fairhaven, and Acushnet and the city of New Bedford. Statute 1980, c. 352, expressly ratified that agreement. Acushnet and Fairhaven have since withdrawn from the District.

[3]The most significant condition was that in the event the landfill site polluted Dartmouth's underground water supply the District would supply Dartmouth with an equivalent amount of water pursuant to an agreement to be entered into between Dartmouth and New Bedford, with the District paying for any cost in excess of the cost to Dartmouth of obtaining the water from wells.

a declaratory judgment that the rights granted to the District in 1981 have lapsed, that the District must reestablish its rights by way of new petitions for special permits and variances, and that the District could not proceed with the landfill without proper authorization from the board.

The District took the position that it did not require the relief granted by the board. On September 10, 1990, a Superior Court judge agreed and ruled that the District, as a body politic of the Commonwealth performing an essential governmental function at the site, is exempt from the Dartmouth zoning by-law and that no permits under the by-law are necessary prior to the building and operating of the sanitary facility.[4] The first count of the Freetown action was thus dismissed, and a declaratory judgment was entered accordingly on count two. Freetown and the board filed timely appeals.[5] Subsequent constructive negotiations between the board and the District led to those parties filing of a "Stipulation as to Judgment," wherein it was set out that, in exchange for the board's no longer contesting the District's exemption from the Dartmouth zoning by-law, the District agreed to operate the facility subject to a variety of conditions. Negotiations between the District and Freetown led to no such happy conclusion, and Freetown, like Lewis Carroll's barrister-Snark, has persisted to the last.[6]

"As a general proposition, the State and State instrumentalities are immune from municipal zoning regulations, unless a statute expressly provides the contrary." *Inspector of*

---

[4]In light of the Superior Court judge's ruling that the District was exempt from the zoning by-law, he had no occasion to examine the validity of the board's 1986 and 1990 "good cause" determinations. In addition, he did not address the merits of Freetown's assertion of standing. We, of course, also do not reach those questions.

[5]The judge also dismissed a separate action against the District and the board brought by one Joseph B. Nastanski and one Alberta Allen, who purportedly represent ten or more taxpayers of the town of Dartmouth. Nastanski and Allen, by an assented-to motion, joined Freetown's appellate brief and filed no brief of their own, and their appeal presents no separate issues.

[6]Carroll, The Hunting of the Snark and Other Poems and Verses, Fit the Sixth — The Barrister's Dream 33-36 (Harper & Brothers 1903).

*Buildings of Salem* v. *Salem State College.*, 28 Mass. App. Ct. 92, 95 (1989). See *Medford* v. *Marinucci Bros.*, 344 Mass. 50, 56 (1962), and cases cited. The Zoning Act (G. L. c. 40A), "[p]roperly construed, . . . does not allow municipal zoning regulation of land or structures owned or leased by the Commonwealth or by its bodies politic and devoted to an essential governmental function." *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth*, 380 Mass. 706, 713 (1980).

General Laws c. 40, § 44F, as inserted by St. 1961, c. 609, which sets out the general powers of regional refuse disposal districts, states that such a district "shall be a body politic and corporate." General Laws c. 21H, § 1(*a*)(2),(3), declares that the provision of the "capacity for the storage, disposal and processing of solid waste . . . is an essential public purpose," and G. L. c. 21H, § 1(*b*)(2), both as inserted by § 3 of St. 1987, c. 584, the Solid Waste Management Act, states that "[i]t is hereby declared to be an essential public purpose to . . . encourage cities and towns to act together effectively to operate solid waste facilities."

That the District is thus a body politic devoted to an essential public purpose and, hence, absent a State statute expressly to the contrary, exempt from municipal zoning by-laws appears uncontradictable. This conclusion is further strengthened by a perusal of the Solid Waste Management Act, St. 1987, c. 584. As noted above, § 3 of that Act added G. L. c. 21H to the General Laws. Section 16 amended G. L. c. 111, § 150A, so as to delete the requirement that solid waste facilities operated by subdivisions of the Commonwealth are subject to municipal zoning by-laws.[7]

_____

[7]Prior to the Act, § 150A read: "No place in any city or town shall be established or maintained or operated by any person, *including any political subdivision . . . of the commonwealth*, as a site for a facility, unless such place has . . . been assigned by the board of health of such city or town as a site for a facility after a public hearing, *subject to the provisions of any ordinance or by-law adopted therein under chapter forty A [The Zoning Act] or corresponding provisions of earlier laws . . .*" (emphasis supplied). Section 16 of the Act rewrote this language to read: "No place in any city or town shall be maintained or operated by any person, including any political subdivision of the commonwealth, as a site for a facility,

We note, as Freetown suggests, that The Zoning Act, c. 40A, § 9, as rewritten by § 10 of the Solid Waste Management Act, does permit municipalities to subject solid waste facilities to certain zoning strictures. Prohibitions of, or license or permit requirements for, such a facility in effect as of July 1, 1987, are valid. Municipalities may prohibit siting facilities in areas critical to drinking water supplies. Moreover, special permits "imposing reasonable conditions on the construction or operation of the facility" are permissible. This language, however, applies to solid waste facilities in general and does not specifically apply to bodies public and corporate performing an essential governmental function. Case law extending from *Teasdale* v. *Newell & Snowling Constr. Co.*, 192 Mass. 440, 442-443 (1906), to *Inspector of Bldgs. of Salem* v. *Salem State College*, 28 Mass. App. Ct. 92 (1989), "assert[s] the supremacy of the State over local land use regulations in connection with State construction projects, *unless the Legislature has made express provision to the contrary*" (emphasis supplied). 28 Mass. App. Ct. at 97. "Certainly the language in [§ 9] does not amount to the express and unmistakable suspension of the usual State supremacy which the *Teasdale, Marinucci,* and *County Commissioners* cases require." *Ibid.*

In a last-gasp attempt to prevail in the face of the exemption, Freetown makes the two-pronged argument that, because the legislation establishing the District incorporated the agreement of December 3, 1979, which required that its "facilities shall be operated . . . subject to the rules and regulations of appropriate Town of Dartmouth . . . agencies," the District is estopped from asserting its exemption from the Dartmouth zoning by-law and that, because the District pursued its application for a special permit with the board to its conclusion, it waived the right to claim exemption from the Dartmouth zoning by-law. Neither argument is persuasive.

or as an expansion of an existing facility, unless, after a public hearing, such place has been assigned by the board of health of such city or town in accordance with the provisions of this section. . . ."

The 1979 agreement speaks of the *operation* of facilities according to the *rules and regulations* of *appropriate* town *agencies*. As the judge below noted, a zoning by-law is not a regulation of an agency, but "a regulation of the municipality promulgated by its legislative body." The special permit process deals with the establishment, not the operation, of the facility and, since the District is exempt from the zoning by-law, the board is not an appropriate agency.

As to the estoppel and waiver arguments, we state at the outset that Massachusetts law disfavors applying waiver and estoppel to governmental bodies in the exercise of their general duties. See *LaBarge* v. *Chief Administrative Justice of the Trial Ct.*, 402 Mass. 462, 468 (1988). In any event, Freetown is not a proper party to invoke estoppel because it has not shown that the District made any representations to it or that it relied on or took any actions in response to representations by the District.

"There can be no waiver of a right unless the right is known and it was intended to surrender it." *Sheehan* v. *Commercial Travelers Mut. Acc. Assn. of America*, 283 Mass. 543, 552 (1933), quoting from *Boston Elev. Ry.* v. *Maryland Cas. Co.*, 232 Mass. 246, 252 (1919). See *Gamache* v. *Mayor of N. Adams*, 17 Mass. App. Ct. 291, 293 (1983). The Solid Waste Management Act, from which the District's exemption from the Dartmouth zoning by-law derives, was approved on December 17, 1987. Therefore, the District's 1981 application for a special permit and its applications of March 21, 1984, and November 25, 1987, for good cause findings could not have involved the waiver of a known right.

> *Judgment affirmed with double costs of appeal.*