KENNETH A. HAMILTON & another,[1] trustees,[2]
vs. PLANNING BOARD OF BEVERLY.

No. 92-P-491.

Essex. June 11, 1993. - September 28, 1993.

Present: ARMSTRONG. KASS, & LAURENCE, JJ.

*Subdivision Control*, Approval not required, Planning board. *Planning Board.*

Where an approved subdivision plan limited the subdivision to five lots, a planning board's subsequent "approval not required" endorsement under G. L. c. 41, § 81P, on a plan showing one of the original five lots divided into two lots, did not unconditionally entitle the owner of the divided lot depicted on the plan, even assuming building and zoning regulations were otherwise satisfied, to a building permit to erect a single-family residence on one of the divided lots and, furthermore, the lot in question could not be divided without the consent of the board upon a petition under G. L. c. 41, § 81W, to modify the approved subdivision plan. [388-390]

CIVIL ACTION commenced in the Superior Court Department on October 11, 1989.

The case was heard by *John T. Ronan*, J., on a statement of agreed facts.

*William H. Sheehan, III*, for the plaintiffs.

*Michael C. Lauranzano*, Assistant City Solicitor, for the defendant.

KASS, J. At trial and on appeal, the parties have defined as the question to be decided whether an endorsement on a plan of land by a planning board under G. L. c. 41, § 81P ("subdivision approval not required"), unconditionally entitles the owner of the lots depicted on the plan, assuming building and zoning regulations are otherwise satisfied, to a building per-

[1]Jeffrey P. Hamilton.
[2]As trustees of Jef-Ken Realty Trust.

mit. A judge of the Superior Court correctly concluded the answer to that question is: "no." We summarize the facts which the parties have agreed upon.

In March, 1982, the planning board of Beverly approved a subdivision plan entitled Bates Park Ave. Extension. That plan, bearing the board's endorsement of approval, was recorded with the registry of deeds on October 26, 1982. The plan disclosed a subdivision of five lots, one of which, Lot $B^2$, contained 27,338 square feet. Among the notes on the approved plan was the following: "This subdivision is limited to five (5) lots unless a new plan is submitted to the Beverly Planning Board which meets their full standards and approval."

Some seven years later, the plaintiffs, owners of Lot $B^2$, presented to the board a plan for a so-called "81P" endorsement, i.e., "Approval under subdivision control law not required." The plan proffered showed Lot $B^2$ divided into two lots, Lot $B$-$2^{A.1}$ and Lot $B$-$2^{A.2}$, the former containing 10,778 square feet and an apparently inhabited log cabin, and the latter containing 10,006 square feet.[3] In terms of minimum lot size (10,000 square feet) and minimum frontage on a street (100 feet), the lots depicted conformed with the zoning ordinance of Beverly. The plan was endorsed and recorded with the registry of deeds. Thereafter, the plaintiffs applied for a building permit to erect a single-family residence on Lot $B$-$2^{A.2}$. In circulating the building permit application to the town agencies having jurisdiction over public safety and land use, the building inspector learned from the planning director of Beverly about the condition noted on the 1982 approved subdivision plan that limited the subdivision to five lots. On the strength of that limitation, the building inspector declined to issue a building permit.

Rather than bringing an action against the building inspector, the plaintiffs chose to complain against the planning board. As relief, they asked for a declaration that the board had in some de facto fashion waived the condition of the sub-

---

[3]There is no clue in the record as to what became of the remaining 6,554 square feet in original parcel $B^2$.

division limiting it to five lots, that the board was estopped from enforcing the condition, and that Lot B-2[A.2] is "a valid building lot." As the case proceeded, the plaintiffs — perhaps unconsciously — shifted ground and argued instead that the "approval not required" endorsement superseded the limiting condition in the plan. The plaintiffs are mistaken under all of their theories.

Approval of a subdivision plan involves procedures, including a public hearing (G. L. c. 41, § 81T) as well as open sessions of the planning board at which the proposed division of a tract of land into smaller lots is carefully reviewed so as to meet design criteria and certain policy objectives relating to streets (with emphasis on maximizing traffic convenience and minimizing traffic congestion), drainage, waste disposal, catch basins, curbs, access to surrounding streets, accommodation to fire protection and policing needs, utility services, street lighting, and protecting access to sunlight for solar energy. See G. L. c. 41, § 81M; *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 435-437 (1981).

The number of lots in a subdivision has a bearing on those considerations. What might be an adequate access road or waste disposal system for five lots is not necessarily adequate for seven or ten. For that reason a planning board may limit the number of lots in a subdivision. Cf. *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801, 807-808 (1978); *SMI Investors (Del.), Inc.* v. *Planning Bd. of Tisbury*, 18 Mass. App. Ct. 408, 411 (1984). If it does so, the board must, as here, note the lot number limitation on the approved plan, which becomes a matter of record. Otherwise, under G. L. c. 41, § 81O, the number, shape and size of the lots shown on a plan may be changed as matter of right, provided every lot still has frontage that meets the minimum requirements of the city or town in which the land is located.

Under G. L. c. 41, § 81W, a person having a cognizable interest may petition the planning board for modification of an approved subdivision plan. Action by a planning board on such a petition for modification incorporates all the procedure attendant on original approval, including, therefore, a

public hearing. Section 81W also provides that no modification may affect the lots in the original subdivision which have been sold or mortgaged.

The provisions built into §§ 81T and 81W, which are designed to protect purchasers of lots in a subdivision and the larger public, would be altogether — and easily — subverted if an approved plan could be altered by the simple expedient of procuring a § 81P "approval not required" endorsement. All that is required to obtain such an endorsement is presentation to a planning board of a plan that shows lots fronting on a public street or its functional equivalent, see G. L. c. 41, § 81L,[4] with area and frontage that meet local municipal requirements. The endorsement of such a plan is a routine act, ministerial in character, and constitutes an attestation of compliance neither with zoning requirements nor subdivision conditions. *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 602-605 (1980). Restrictions in an approved subdivision plan are binding on a building inspector. See *Marino* v. *Board of Appeal of Beverly*, 2 Mass. App. Ct. 859, 860 (1974).

The limited meaning which may be ascribed to a § 81P endorsement and the ministerial nature of the endorsement defeat the argument of the plaintiffs that the endorsement constituted a waiver of the five-lots limitation — prescinding from the question whether the board, for reasons we have discussed, could waive the limitation, thus altering the plan, without a public hearing. See *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 437, 443 (1979); *Meyer* v. *Planning Bd. of Westport*, 29 Mass. App. Ct. 167, 170-171 (1990); *Batchelder* v. *Planning Bd. of Yarmouth*, 31 Mass. App. Ct. 104, 109 (1991).

In his judgment, the Superior Court judge ordered that the complaint be dismissed. Insofar as the complaint asked for a declaration of rights, the judgment should state that Lot B² could not be divided without the consent of the planning

---

[4]See also *Poulos* v. *Planning Bd. of Braintree*, 413 Mass. 359, 361 (1992); *Fenn* v. *Middleborough*, 7 Mass. App. Ct. 80, 83-84 (1979); *Sturdy* v. *Planning Bd. of Hingham*, 32 Mass. App. Ct. 72 (1992).

board upon a petition under G. L. c. 41, § 81W, to modify the approved subdivision plan. Except as thus modified, the judgment is affirmed.

*So ordered.*