Cowin, J.
INTRODUCTION
Through various zoning and planning challenges, the Town of Randolph (Randolph or Town of Randolph) seeks to stop a proposed plan by the defendant Stoughton Route 24 Trust to build a multi-screen cinema project on land located in the Stoughton Technology Center in the Town of Stoughton (Stoughton or Town of Stoughton). Stoughton, acting through various defendant Boards and its Town Meeting, made several permitting and rezoning decisions to accommodate this cinema project. Neighboring Randolph *74 which has an opportunity to have a large cinema complex built within its borders and in very close proximity to Stoughton’s cinema project has filed this suit in an effort to stop construction of Stoughton’s cinema project.
Presently, this matter is before the Court on the Town of Randolph’s motion to amend its complaint pursuant to Mass.R.Civ.P. 15(a); defendant Stoughton Route 24 Trust’s motion to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6); and the Stoughton Redevelopment Authority’s motion to intervene pursuant to Mass.R.Civ.P. 24. For the reasons discussed below, Randolph’s motion to amend is ALLOWED in part and DENIED in part; Stoughton Route 24 Trust’s motion to dismiss is ALLOWED as to Count II of the complaint and DENIED as to all other Counts; and the Stoughton Redevelopment Authoriiy’s motion to intervene is ALLOWED.
BACKGROUND
For purposes of the present motions, the following allegations as set forth in the amended complaint are accepted as true.[2] The Stoughton Redevelopment Authority (SRA) is a redevelopment authority organized under G.L.c. 121B, §4. In the late 1970’s, SRA began developing the North Stoughton Industrial Park, which was eventually renamed the Stoughton Technology Center (the Center). The Center abuts the Town of Randolph and is separated from the remainder of the Town of Stoughton by state highway Route 24. The Center is located within an area frequently served by Randolph’s fire and police departments pursuant to mutual aid agreements between Randolph and Stoughton. Because the Center is located on the east (Randolph) side of Route 24, the Randolph police and fire departments often respond to emergency calls at the Center.
Defendant Stoughton Route 24 Trust (the Trust) is the owner of two parcels of land (the Land) located within the Center which land is bordered on its northerly and easterly sides by a wetland known as Bear Swamp. Bear Swamp has surface and subsurface connections to aquifers, wells and reservoirs used as the principal source of public drinking water by the Town of Randolph.
The development and use of the Center is governed by two documents; one entitled “North Stoughton Industrial Park: Redevelopment Plan” which was first promulgated by the SRA in «September of 1968 and was last revised in May of 1980; and the second, an instrument entitled “Land Disposition Agreement by and between the Town of Stoughton/Stoughton Redevelopment Authority and Cochituate Corporation” (Disposition Agreement) and dated November 8, 1994. These documents contemplate the establishment of retail businesses, personal service establishments, banks, professional offices, hotels, and light industrial and research and development uses in the Center. Neither document permits entertainment uses such as the proposed cinema project.
In the early 1980’s, the Department of Environmental Quality Engineering (DEQE) issued a Superseding Order of Conditions (Superseding Order) which allowed the proposed filling of certain wetlands in connection with the development of the Center. The Town of Randolph appealed the issuance of this Superseding Order, contending that the filling of the wetlands would adversely impact the water supply values of Bear Swamp as well as the Great Pond, a public water supply serving Randolph, Braintree and Holbrook. After several years of extensive negotiations between the SRA and Randolph concerning water supply issues associated with development of the Center, the DEQE held an adjudicatory hearing on the matter. Thereafter, on October 24, 1984, DEQE issued a Final Order of Conditions, subsequently recorded in the Registry of Deeds, approving further Center development in light of various pollution prevention and control measures agreed upon by the parties. Two other documents, a Conservation Restriction and a Declaration of Industrial Park Restriction (the Declaration) were also executed and recorded in order to implement the DEQE approval. The Conservation Restriction prohibited the filling or excavation of the remaining 100 acres of Bear Swamp within the Center. The Declaration prohibited eight enumerated uses within the Center and imposed restrictions on the handling of toxic and potentially polluting substances with respect to all other uses. By its own terms, the Declaration may be enforced not only by Stoughton but also by Randolph in order to protect the watershed and its water supply.
For the past twelve years, the emphasis in developing the Center has shifted to office, hotel, retail and service uses. During this period, some 722,000 square feet of development has occurred in the Center. Until this lawsuit, however, Randolph has never claimed any impact on its water supply or any violation of the Declaration from the development in the Center.
The present controversy stems from a project undertaken by the Trust (the owner of two parcels of land in the Center) to construct and operate a multi-screen cinema complex in the Center. The Land owned by the Trust was located in an “Industrial” zoning district in which the proposed cinema project was a prohibited use. Thus, the Stoughton Planning Board convened a public hearing to consider an amendment to the Zoning Map rezoning the Land to a “Highway Business” zoning district in which a cinema would be permissible. Public notice of the time, place and subject matter of the Planning Board’s hearing on this amendment was posted on Stoughton’s “official bulletin board” on October 18, 1996, six days prior to the hearing. The hearing was held on October 24th, and on November 12, 1996, the Planning Board reported favorably to a Special Town Meeting. The Town Meeting voted to enact the Zoning Map amendment.
Thereafter, on December 26, 1996, the Trust applied to the Stoughton Zoning Board of Appeals (ZBA) for a 13.5-footvariance from the 30-foot height resfrie *75 tion imposed on all buildings in the “Highway Business” zoning district. The ZBA found that in view of conditions and circumstances uniquely affecting the Land, the Trust was entitled to the requested height variance, but conditioned the variance on, among other things, the construction of a pedestrian overpass across Technology Center Drive. (Technology Center Drive is a four-lane street separating the proposed cinema building from the cinema parking lot.)
The Trust also filed an Approval Not Required (ANR) Plan with the Planning Board which consolidated the two separate parcels comprising the Land into a single lot for zoning purposes. The two parcels are bisected by a segment of Technology Center Drive constructed pursuant to a subdivision plan endorsed in 1987 and accepted and maintained by the Town of Stoughton as a public way. This public way is depicted in the Trust’s ANR Plan as an “access and utility easement” across which the pedestrian bridge will be built. The Planning Board endorsed the Trust’s ANR Plan.
On February 5, 1997, the Town of Randolph filed the present action against the Town of Stoughton, the ZBA, the Planning Board and the Trust. Count I of the complaint alleges that the amendment rezoning the Land from “Industrial” to “Highway Business” district is invalid due to a failure to comply with the public notice requirements of G.L.c. 40A, §5.[3] Count II seeks a declaratory judgment pursuant to G.L.c. 231A that the zoning amendment constitutes unconstitutional spot zoning and/or contract zoning. Count III of the complaint further seeks a declaratory judgment that the zoning amendment violates the Stoughton Wetlands Protection Bylaw by amending the Town’s Wetlands Map without complying with G.L.c. 40A, §5. Count IV alleges that ZBA’s grant of the height restriction variance was arbitrary, capricious and in excess of its authority under G.L.c. 40A, §10. Count V claims that in endorsing the Trust’s ANR Plan, the Planning Board de facto amended the Center’s subdivision plan without adhering to the procedures contained in G.L.c. 41, §81W. Count VI alleges that the Board acted arbitrarily and in excess of its authority by discontinuing a public way without complying with the procedures set forth in G.L.c. 82, §21, G.L.c. 30B, §16 and G.L.c. 40, §15. Finally, Count VII of the complaint seeks a declaration that, even assuming that the Planning Board’s ANR endorsement was proper, the resulting lot violates Stoughton Zoning By-law.
DISCUSSION
I. RANDOLPH’ S MOTION TO AMEND THE COMPLAINT
Randolph moves pursuant to Rule 15 to amend its complaint in two respects: it seeks to add the Randolph Planning Board, Board of Selectmen and Conservation Commission as plaintiffs; and, secondly, to add a claim under G.L.c. 214, §7A for damage to the environment. Massachusetts Rule of Civil Procedure 15 provides in relevant part:
a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ... whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading. Mass.R.Civ.P. 15(a), (c). See also G.L.c. 231, §51 (1994).
The decision to grant a motion to amend lies within the broad discretion of the trial judge. Cappuccio v. Zoning Board of Appeals of Spencer, 398 Mass. 304. 314 (1986); Murphy v. I.S.K. Con. of New England, Inc., 409 Mass. 842, 864 (1991). However, a motion to amend should be allowed unless some good reason appears for denying it. Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 289 (1977): Quimby v. Zoning Board of Appeals of Arlington, 19 Mass.App.Ct. 1005, 1007 (1985). Good reasons for denying such a motion include undue delay, bad faith or a dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party or the legal futility of the proposed amendment. Foman v. Davis, 371 U.S. 178, 182 (1962); Castellucci v. United States Fid. & Guar. Co., supra at 290; Quimby v. Zoning Board of Appeals of Arlington, supra at 1007.
The fact that an original plaintiff may not have had standing to bring the action is not a reason to deny an amendment to allow the substitution of parties who have standing. City Council of Peabody v. Board of Appeals of Peabody, 360 Mass. 845, 867 (1971); Rafferty v. Sancta Maria Hospital, 5 Mass.App.Ct. 624, 626-27 (1977); Quimby v. Zoning Board of Appeals of Arlington, supra at 1007. As will become apparent from the discussion, infra, concerning the Trust’s motion to dismiss, the addition of Randolph’s Planning Board as a plaintiff will strengthen the Town’s standing to bring many of the claims set forth in the original complaint.[4] The motion to amend is therefore allowed as to the sections of the complaint that accomplish that purpose, Counts I, III and IV. With respect to the Board of Selectmen and Conservation Commission, however, these governmental bodies have no greater standing to raise the zoning and planning challenges at issue than does the Town of Randolph itself. As an amendment to add these bodies would be futile, this Court exercises its discretion to deny an amendment to the complaint to add these two parties.
Randolph further seeks to amend its complaint to add a claim under G.L.c. 214, §7A. Chapter 214, Section 7A provides:
The superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs, or upon such an action by *76 any political subdivision of the commonwealth, determine whether such damage is occurring or is about to occur and may, before the final determination of the action, restrain the person causing or about to cause such damage; provided, however, that the damage caused or about to be caused by such person constitutes a violation of a statute, ordinance, by-law or regulation the major purpose of which is to prevent or minimize damage to the environment. G.L.c. 214, §7A (1994).
Randolph’s proposed amended complaint alleges that the site work commenced on the Land in connection with the cinema project violates the permit requirements of the state and federal Clean Water Acts as well as the Massachusetts Environmental Protection Act, and seeks a restraining order against further damage to the environment under c. 214, §7A.
An amendment which seeks to expose an existing party to a new theory of liability arising from the same facts underlying the original complaint is common and generally should be allowed. Guardianship of Hurley, 394 Mass. 554, 560 (1985); Christopher v. Duffy, 28 Mass.App.Ct. 780, 785 (1990). Randolph’s proposed claim under c. 214, §7A arises out of the same cinema project at issue in its original complaint and involves the same and related facts. Moreover, trial' in the present case is not imminent, discovery has not even begun and it is apparent that no prejudice will be caused the defendants by an amendment to the complaint. See Sullivan v. Iantosca, 409 Mass. 796, 800 (1991).
Stoughton argues that an amendment to add such a claim would be of no avail, since a March 28, 1997 letter by the DEP states that in the agency’s opinion, the cinema project is in compliance with the Wetlands Protection Act and the Final Order of Conditions for the site. Under c. 214, §7A, however, the DEP’s determination is not binding on the Superior Court. The Superior Court is explicitly authorized by said section to make its own determination of whether environmental damage is occurring or is about to occur. Moreover, DEP’s determination that no violations of the Wetlands Protection Act had occurred as of March 28th does not address any subsequent environmental damage that may be occurring as the cinema project proceeds. Thus, the addition of a claim under G.L.c. 214, §7A has not been rendered futile by the existence of the DEP letter. Accordingly, Randolph’s motion to amend the complaint to add a cause of action under G.L.c. 214, §7A is granted.
II. THE TRUST’S MOTION TO DISMISS
Defendant Stoughton Route 24 Trust (the Trust) moves to dismiss all counts of Randolph’s complaint pursuant to Mass.R.Civ.P. 12(b)(6). When the court-considers a motion to dismiss for failure to state a claim upon which relief can be granted, all allegations in the complaint are to be taken as true and the plaintiff is entitled to all favorable inferences to be drawn therefrom. Nader v. Citron, 372 Mass. 96, 98 (1977); General Motors Acceptance Corp. v. Abington Casualty Insurance Co., 413 Mass. 583, 584 (1992). A Rule 12(b)(6) motion should not be allowed unless it is shown beyond doubt that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Spinner v. Nutt, 417 Mass. 549, 550 (1994); Romano v. Sacknoff, 4 Mass.App.Ct. 862, 862 (1976). The Trust’s motion to dismiss is considered in the context of the amended complaint.
The critical question for the purposes of the Trust’s motion is whether the Town of Randolph has standing to challenge the various zoning and planning actions of its neighboring municipality, Stoughton. The Trust contends that one municipality can never have standing under the Zoning Act, Chapter 40A, to challenge the zoning of another municipality. This proposition has never been decided in Massachusetts.[5] The overwhelming majority of jurisdictions which have considered the issue, however, have concluded that a municipality may have standing to challenge the zoning laws of another municipality to the same extent as private parties; i.e., the municipality has standing so long as it demonstrates aggrievement within the meaning of the zoning act. See Board of County Commissioners v. City of Thornton, 629 P.2d 605, 610-11 (Colo. 1981) (holding that a city has standing to challenge the legality of the county’s rezoning of land contiguous to the city and affecting its property value); Village of Barrington Hills v. Village of Hoffman, 410 N.E.2d 37, 40 (Ill. 1980), cert. den., 449 U.S. 1126 (1981) (holding that a municipality has standing to challenge the zoning ordinance of a neighboring municipality upon demonstrating that its corporate interests and responsibilities are directly and adversely affected by the ordinance); Borough of Roselle Park v. Township of Union, 272 A.2d 762, 766 (N.J. Super. Ct. Law Div. 1970) (concluding that a borough had standing to challenge a neighboring town’s grant of a variance on land within 200 feet of the boundary between the two municipalities).
Those courts which have dismissed cases by one municipality challenging the zoning of another municipality for lack of standing have done so because the appealing municipality has failed to show aggrievement. See Battaglia Fruit Co. v. Maitland, 530 So.2d 940, 943 (Fla. App. 1988) (holding that a city’s zoning appeal should be dismissed for lack of standing where the city failed to show that it was aggrieved by the county’s rezoning of land abutting the city); Greenbelt v. Jaeger, 206 A.2d 694, 697-98 (Md. 1965) (dismissing case where city failed to demonstrate that it was aggrieved by the rezoning of property in an abutting municipality). For a summary of the relevant cases, see “Standing of Municipal Corporation or other Governmental Body to Attack Zoning of Land Outside Its Borders,” 49 A.L.R.3d 1126 (1973).
A reason stated for permitting one municipality to challenge another’s zoning decisions is that a statutory zoning scheme which provides for regional planning boards and notice of zoning hearings to adjoining *77 municipalities recognizes that zoning concerns do not end at artificial boundary lines. The rights and interests of residents and taxpayers of one municipality may be adversely affected by proposed zoning action in a neighboring municipality. See Borough of Roselle Park v. Township of Union, supra, at 766. This rationale applies to Chapter 40A, which contains several provisions, including Sections 5, 8, 11 and 15, requiring a municipality to give notice of its zoning hearings to the planning board of abutting municipalities.[6] I am persuaded by the rationale of the majority of the decisions of the other jurisdictions which have considered this issue and accordingly, I decline to find any per se prohibition on a municipality’s standing to challenge the actions of a neighboring municipality under the Zoning Act.[7] Since each count of Randolph’s amended complaint raises different zoning issues, the standing arguments with respect to each count are slightly different and are addressed in the context of each count.
A. COUNT I
In Count I of the complaint, Randolph seeks to invalidate the November 1996 zoning amendment on the ground of procedural defects. Count I of the complaint alleges that Stoughton violated G.L.c. 40A, §5 by posting notice of the Planning Board hearing only six, rather than fourteen, days prior to the hearing.
Chapter 40A, §5 provides:
Notice of the time and place of such public hearing, of the subject matter, sufficient for identification, and of the place where texts and maps thereof may be inspected shall be published in a newspaper of general circulation in the city or town once in each of two successive weeks, the first publication to be not less than fourteen days before the day of said hearing, and by posting such notice in a conspicuous place in the city or town hall for a period of not less than fourteen days before the day of said hearing. Notice of said hearing shall also be sent by mail, postage prepaid to the department of community affairs, the regional planning agency, if any, and to the planning board of each abutting cities and towns [sic].
The effect of noncompliance with these notice requirements was addressed in Hallenborg v. Town Clerk of Billerica, 360 Mass. 513 (1971), in which there were only thirteen days between the first publication of notice and the actual hearing, rather than the fourteen required by the statute. The Court indicated that although strict compliance with statutory procedures is ordinarily treated as mandatory, some flexibility and the employment of equitable principles is necessary with respect to notice of purely advisory proceedings such as those before a town planning board on zoning amendments. Id. at 517-18. The Court stated, at 518:
amendments of zoning by-laws or ordinances ought not to be set aside lightly as invalid because of trivial procedural defects in their adoption, (a) at the behest of persons who have not shown themselves to be prejudiced significantly by the procedural deficiencies, and (b) at a very great or disproportionate cost to other persons who have relied in good faith upon the by-law as adopted and published.[8]
According to Hallenborg, an unintentional, nonprejudicial, trivial defect in notice of a planning board meeting is not necessarily fatal.[9] As Hallenborg suggests that prejudice is a factor, only a party who has been prejudiced has standing to complain.
In the present case, Randolph does not allege that it failed to receive the mail notice to which its Planning Board was entitled under Section 5. Randolph alleges, rather, that a defect in notice to the general public, the posting of notice at town hall, deprived the Planning Board of jurisdiction to consider the zoning amendment and make a recommendation to the Special Town Meeting, invalidating the zoning amendment itself. To the extent that there was inadequate notice to the general public, the potential opportunity which Randolph may have had to affect the ultimate decision is eliminated or discouraged. Randolph, thus, may have lost the opportunity to present its opposition as part of a larger group composed of Stoughton residents who share Randolph’s views. Since this group might have contained Stoughton residents, it may have had more of an impact on the decision-makers. Given this view, Randolph could assert standing from the deprivation of potential allies in affecting the decisional process. The legislative recognition of the interests of abutting municipalities (in the notice requirement to them contained in G.L.c. 40, §5) recognizes the right of the abutting municipalities to participate in the process at some stage. Randolph may thus be able to demonstrate prejudice from the procedural defect under G.L.c. 40A, §5. This issue cannot be resolved on a motion to dismiss; factual issues are involved that are more appropriate for resolution on summary judgment or possibly trial. This is particularly true in view of the criteria enunciated in Hallenborg. Accordingly, Count I of the complaint is not to be dismissed.[10]
B. COUNT IV: APPEAL OF VARIANCE
In Count IV of the complaint, Randolph seeks to invalidate the ZBA’s grant of a height restriction variance as arbitrary, capricious and in excess of its authority under G.L.c. 40A, §10. The Trust contends, however, that Count IV should be dismissed because Randolph lacks standingunder G.L.c. 40A, §17 to seek judicial review of the ZBA’s grant of a height variance. Section 17 provides:
Any person aggrieved by a decision of the board of appeals or any special permit granting authority . . . whether or not previously a party to the proceeding, or any municipal officer or board may appeal to . . . the superior court department in which the land is situated ... by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk.
*78 Section 17 has been interpreted to grant standing to municipal officers or boards without a showing that their interests have been harmed by the decision. Planning Board of Reading v. Board of Appeals of Reading, 333 Mass. 657, 662 (1956); Carr v. Board of Appeals of Medford, 334 Mass. 77, 79 (1956); Harvard Square Defense Fund, Inc. v. Planning Board of Cambridge, 27 Mass.App.Ct. 491, 493, rev. den., 405 Mass. 1204 (1989). However, the Trust contends that under §17 the term “municipal officer or board” refers only to the officers or boards of the particular municipality whose zoning decision is being challenged.
It is well established that the term “municipal officer or board” is limited in meaning to officers or boards having duties to perform in relation to the building code or zoning ordinances. Carr v. Board of Appeals of Medford, supra at 80; Harvard Square Defense Fund, Inc. v. Planning Board of Cambridge, supra at 496. To interpret the statute as giving the right of appeal to any municipal officer, regardless of whether they have zoning duties to perform, would “greatly impair the effective operation of the statute.” Carr v. Board of Appeals of Medford, supra at 80. Similarly, to grant standing to a board or officer from any municipality without a showing of aggrievement would greatly impair the effective operation of the statute.
In addition, it is significant that §17 provides:
a ciiy or town may provide any officer or board of such city or town with independent legal counsel for appealing, as provided in this section, a decision of a board of appeals or special permit granting authority and for taking such other subsequent action as parties are authorized to take.
This provision indicates that the officer or board given standing under §17 is that of the municipality whose decision is being challenged. Since it would be a conflict of interest for municipal counsel to represent parties on both sides of an appeal, independent counsel is necessary where the appellant is a municipal officer or board. Thus, this Court concludes that the term “municipal officer or board” in c. 40A, §17 refers only to the municipality whose zoning decision is at issue.[11]
Status as a municipal officer or board is not the only basis for standing under c. 40A, §17. Said section also confers standing upon any person aggrieved by the decision of a zoning board of appeals or special permit granting authority. The Trust contends, however, that Randolph has failed to demonstrate specific facts establishing that it has suffered an injury to its private legal or property interests so as to be a person “aggrieved” within the meaning of §17. A plaintiff is-presumed to be a person aggrieved with standing if he is a “party in interest” entitled to receive notice of a public hearing before the municipal board pursuant to Section 11 of the Act. Marotta v. Board of Appeals of Revere, 336 Mass. 199, 204 (1957); Gordon v. Zoning Board of Appeals of Lee, 22 Mass.App.Ct. 343, 347, rev. den., 398 Mass. 1103 (1986). Parties in interest under §11 are:
the petitioner, abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters within three hundred feet of the property line of the petitioner, as they appear on the most recent applicable tax list, notwithstanding that the land of any such owner is located in another city or town, the planning board of the city or town, and the planning board of every abutting city or town. G.L.c. 40A, §11 (1994).
While abutters entitled to notice of a zoning board of appeals hearing enjoy a presumption of aggrieved person status, once a defendant challenges an abutter’s standing and offers evidence to support that challenge, ihe jurisdictional issue is to be decided on the basis of all the evidence with no benefit to the plaintiff from the presumption. Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719, 721 (1996); Barvenik v. Board of Aldermen of Newton, 33 Mass.App.Ct. 129, 131 (1992). The plaintiff then bears the burden of putting forth credible evidence to substantiate its claims of injury, establishing by direct facts, and not by speculative personal opinion, that his legal rights have been or will be infringed or that his property interests have been or will be affected. Marashlian v. Zoning Board of Appeals of Newburyport, supra at 723; Barvenik v. Board of Aldermen of Newton, supra at 132. A determination that a party is aggrieved is a matter of degree, calling for discretion, and is essentially a question of fact for the trial judge. Marashlian v. Zoning Board of Appeals of Newburyport, supra at 721-22; Rafferty v. Sancta Maria Hospital, 5 Mass.App.Ct. 624, 629 (1977). Thus, the issue of lack of standing should generally be considered at the summary judgment stage rather than on a motion to dismiss.
Nonetheless, standing as an “aggrieved person” is jurisdictional and may be raised at any stage in the proceeding. Barvenik v. Board of Alderman of Newton, supra at 131, n.6. In the present case, the Trust alleges that Randolph has failed to demonstrate that the grant of a variance directly and proximately caused harm to its interests in its water supply and roads. In order to demonstrate standing, Randolph must specifically show that its interests are more adversely affected by the cinema constructed with the height variance than they would be by other uses and activities permitted as of right on the Land without the variance. Circle Lounge & Grill, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 430 (1949); Harvard Square Defense Fund, Inc. v. Planning Board of Cambridge, supra at 494; Cohen v. Zoning Board of Appeals of Plymouth, 35 Mass.App.Ct. 619, 620 (1993), rev. den., 417 Mass. 1102 (1994); Riley v. Janco Cent., Inc., 38 Mass.App.Ct. 984, 985 (1995), rev. den., 421 Mass. 1108 (1996). See also Tsagronis v. Board of Appeals of Wareham, 415 Mass. 329, 335-36 & n.3 (1993) (Abrams, dissenting). While it may be difficult for *79 Randolph to specifically address the adverse impact of a thirty-foot height variance when a substantial factual showing is required, its allegation that the cinema project as authorized by the variance will introduce a greater mass and intensity of use of the Land than contemplated by the Redevelopment Plan or the Disposition Agreement and thus, a greater demand on Randolph’s capacity to respond to fire and police emergencies and greater adverse impacts on Randolph’s roads, is sufficient to withstand a motion to dismiss. Because this Court cannot say that it is beyond doubt that Randolph will be able to prove no set of facts in support of its standing as an aggrieved person under G.L.c. 40A, §17, the motion to dismiss Count IV of the complaint must be denied.
C. COUNTS II and III for DECLARATORY JUDGMENT
In Count II of the complaint, Randolph seeks a declaratory judgment pursuant to G.L.c. 231A that the zoning amendment constitutes unconstitutional spot zoning and/or contract zoning. In Count III of the complaint, Randolph further seeks a declaratory judgment that the zoning amendment violates the Stoughton Wetlands Protection Bylaw by amending the town’s Wetlands Map without complying with G.L.c. 40A, §5. The Trust contends, however, that Counts II and III should be dismissed because Randolph lacks standing under G.L.c. 231A and c. 40A to bring such claims for declaratory judgment with respect to Stoughton’s zoning activities. Before a court will entertain a petition for declaratory relief, an “actual controversy” sufficient to withstand a motion to dismiss must appear on the pleadings. G.L.c. 231 A, §1. Massachusetts Association of Ind. Ins. Agents & Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 292 (1977). Further, even where an actual controversy exists, the particular plaintiff must demonstrate the requisite legal standing to secure its resolution by the court. Hillman v. Second Bank-State Street Trust Co., 338 Mass. 15, 19 (1958); Massachusetts Association of Ind. Ins. Agents & Brokers, Inc. v. Commissioner of Insurance, supra at 292. A party has standing for the purposes of G.L.c 231A when it can allege an injury within the area of concern of the statute or regulatory scheme under which the injurious action has occurred, and where it has a definite interest in the matters in contention in the sense that its rights will be significantly affected by a resolution of the contested point. Circle Lounge & Grill, Inc. v. Board of Appeal of Boston, 324 Mass. 427, 430-31 (1949); Massachusetts Association of Ind. Ins. Agents & Brokers, Inc. v. Commissioner of Insurance, supra at 293; Bonan v. Boston, 398 Mass. 315, 326 (1986); Board of Appeals of Rockport v. DeCarolis, 32 Mass.App.Ct. 348, 353 (1992).
1. Count II: Spot & Contract Zoning
Count II of the complaint alleges that the rezoning of the Land from “Industrial” to “Business Highway” is invalid either as spot zoning or contract zoning. Chapter 40A, §4 provides that “[a]ny zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted.” G.L.c. 40A, §4 (1994). This provision prohibits “spot zoning,” defined as a legislative change to existing zoning restrictions which arbitrarily and unreasonably singles out one parcel of land for treatment differently from that accorded surrounding parcels in the same district indistinguishable in character. Marblehead v. Rosenthal, 316 Mass. 124, 126 (1944); Lamarre v. Commissioner of Public Works of Fall River, 324 Mass. 542, 545 (1949); Van Sant v. Building Inspector of Dennis, 352 Mass. 289, 292 (1967); National Amusements, Inc. v. Boston, 29 Mass.App. 305, 309 (1990). Standing to bring a spot-zoning challenge derives from the uniformity requirement of §4, which confers upon all landowners a cognizable interest in having their property treated in the same manner as other properties indistinguishable in character and use within a single zoning district. See SCIT, Inc. v. Planning Board of Braintree, 19 Mass.App.Ct. 101, 107-08 (1984) (stating that §4 involves the division of a municipality into zoning districts and requires uniformity therein so that landowners in the municipality can expect equal treatment for similar land). Even without the statute, it is a constitutional requirement that a municipality not treat similarly situated landowners differently. See, for example, Sinn v. Board of Selectmen of Acton, 357 Mass. 606, 610-11 (1970).
In the present case, although Randolph is an abutter to the rezoned parcel at issue, Randolph clearly does not own property in the same zoning district or even within the same municipality as the Trust’s land, and thus has no standing under c. 40A, §4, which requires uniformity within each zoning district of a city or town and to a lesser extent, uniformity among districts within a single city or town. See Van Sant v. Building Inspector of Dennis, supra at 292 (stating that spot zoning involves the singling out of one parcel within an established zone); Marblehead v. Rosenthal, supra at 127 (evaluating a spot-zoning claim with respect to different districts within a single town); Canteen Corp. v. Pittsfield, 4 Mass.App.Ct. 289, 293 (1976) (same).
Further, insofar as its spot-zoning claim is based on constitutional grounds, the crux of such a claim is that parcels indistinguishable in use and character within the same district were treated disparately without a legitimate zoning justification and for the economic benefit of a particular landowner. However, Randolph has no protectible interest with respect to the zoning treatment of the Land relative to that of other parcels in the Town of Stoughton and no authority exists for Randolph to invoke the public welfare of other Stoughton landowners to argue that the Trust’s Land was arbitrarily singled out from other land under the zoning authority of Stoughton. See Sinn v. Board of Selectmen of Acton, supra, at 610-11 (noting that spot zoning as a violation of equal protection involves the public welfare of the municipality whose zoning is *80 challenged and analyzes whether similarly situated landowners within a particular municipality are treated the same): To permit Randolph to have standing to bring a spot-zoning challenge would expand this cause of action beyond the existing case law. Accordingly, Count II of Randolph’s complaint fails to state a claim for invalid spot zoning.
Moreover, Randolph’s allegation of unconstitutional contract zoning fails to state a cognizable claim because it does not allege that the rezoning of the Land was conditioned on extraneous considerations. “Contract zoning” is the term given to acts of rezoning granted on the express condition that owners impose certain restrictions on their land in order to obtain the desired rezoning. Sylvania Elec. Prods., Inc. v. Newton, 344 Mass. 428, 432 (1962). Contract zoning is invalid when based on “extraneous considerations,” i.e., the conditions imposed on the rezoning are unrelated to the parcel being rezoned, so that the rezoning is contrary to general public policy. Id. at 434. An example of invalid contract zoning would be if the Town of Stoughton conditioned the rezoning of the locus in the Park on the Trust’s giving land for public use elsewhere in the town. See id. However, Randolph’s allegation that Stoughton rezoned the Land from “Industrial” to “Business Highway” on the condition that the Trust build a movie theater there, conferring tax benefits on the town, simply does not constitute the type of extraneous consideration unrelated to the locus necessary to establish contract zoning. The proposed use of particular land is intimately related to a locus and will always be a relevant area of concern for zoning authorities so that the imposition of conditions on the proposed use of a locus cannot be considered “extraneous.” Accordingly, Randolph’s allegations that the zoning amendment at issue was invalid spot or contract zoning fail to state a claim, requiring dismissal of Count II.
Simply because Randolph cannot challenge Stoughton’s zoning amendment under a spot zoning or contract zoning theory does not deprive Randolph of the ability to protect its property interests from harm caused by the zoning decisions of neighboring Stoughton. As discussed infra, there are certain areas in which the Zoning Act expressly provides for the service of notice to abutting municipalities, suggesting that Randolph will indeed have standing to challenge some zoning actions taken beyond its municipal boundary line.
2. Count III: Invalid Amendment of Stoughton’s Wetlands Map
In Count III of the complaint, Randolph seeks to invalidate the zoning amendment on the ground that,in connection with the amendment, Stoughton removed approximately 5,000 square feet of wetlands in the Center from the Wetlands Overlay[12] on the Stoughton Wetlands Map without complying with the procedures for amending zoning by-laws and maps set forth at G.L.c. 40A, §5.[13] The Trust claims that Randolph lacks standing to bring such a claim. However, if Stoughton had complied with the statutory procedures for amending a zoning map, Randolph’s Planning Board would have been entitled to notice of the proposed amendment pursuant to section 5, which requires notice of planning board hearings concerning zoning amendments to be sent by mail to the planning board of each abutting city or town. Thus, there is a presumption that Randolph has standing with respect to Stoughton’s amendment of its zoning map. Moreover, Randolph’s allegation that the exclusion of wetlands in the Center from the Wetlands Overlay would increase the density and intensity of the Land’s use resulting in an adverse impact on Randolph’s water supply and infrastructure states a claim of sufficient injury within the area of concern of Chapter 40A, at least at this stage of the proceedings, to withstand a motion to dismiss Count III.
D. COUNTS V, VI and VII: ANR APPROVAL
The Trust contends that the remaining counts of the complaint, Counts V, VI and VII, should be dismissed because Randolph lacks standing to challenge the validity of the Planning Board’s Approval Not Required (ANR) endorsement. Count V alleges that in granting the ANR approval, the Planning Board de facto amended the Center’s subdivision plan without complying with G.L.c. 41, §81 Was required by law.[14] Further, Count VI alleges that in granting the ANR approval, the Board discontinued a public way in violation of G.L.c. 83, §§21-23, G.L.c. 30B, §16 and G.L.c. 40, §15. Finally, Count VII seeks a declaration that, even assuming that the Planning Board’s ANR endorsement were proper, the resulting lot violates the Stoughton Zoning By-law.
Chapter 41, §81P of the Subdivision Law provides:
Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town in the manner prescribed in Section eighty-one Y, and if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person authorized by it the words “approval under the subdivision control law not required” or words of similar import . . . Such endorsement shall not be withheld unless such plan shows a subdivision. G.L.c. 41, §8IP (1994).
For a planning board, the determination whether a perimeter plan qualifies for an endorsement that approval under the subdivision control law is not required is a routine and ministerial exercise. Smalley v. Planning Board of Harwich, 10 Mass.App.Ct. 599, 603-04 (1990); Hamilton v. Planning Board of Beverly, 35 Mass.App.Ct. 386, 389 (1993); Stefanick v. Planning Board of Uxbridge, 39 Mass.App.Ct. 418, 422 (1995), cert. den., 422 Mass. 1104 (1996). It is well established that fin ANR endorsement under §81P *81 does not mean that the lots shown on the plan are buildable lots or are in compliance with either zoning or subdivision requirements. Smalley v. Planning Board of Harwich, supra at 602-605; Hamilton v. Planning Board of Beverly, supra at 389; Cricones v. Planning Board of Dracut, 39 Mass.App.Ct. 264, 268 (1995). Accordingly, the Appeals Court held in 1994 that a property owner lacks standing to challenge a planning board’s decision to give abutting land an ANR endorsement when that plaintiffs challenge is predicated entirely on a particular use of that land. See Reagan v. Planning Board of Braintree, 37 Mass.App.Ct. 956, 957 (1994) (affirming Land Court’s ruling that plaintiffs who claimed that the proposed use of abutting land would result in increased traffic to the area lacked standing to challenge the ANR endorsement of a proposed shopping mall on the ground that the parcel depicted was not in single ownership and therefore was not a “lot”).
The following year, however, the Appeals Court recognized that for adjoining landowners an ANR endorsement may be consequential, resulting in more intensive use of the land shown in the §81P plan or freezing applicable zoning bylaws for three years.[15] Stefanick v. Planning Board of Uxbridge, supra at 422. Thus, the Court stated that an abutting landowner may challenge the grant of an §8 IP endorsement through an action in the nature of certiorari pursuant to G.L.c. 249, §4. Id. at 422-24. Standing for such an action is governed by Chapter 41, Section 81BB which confers standing upon “[a]ny person, whether or not previously a party to the proceedings, or any municipal officer or board, aggrieved by . . . any decision of a planning board concerning a plan of a subdivision of land.” G.L.c. 41, §81BB (1994). Randolph’s allegation that it is an aggrieved abutter because the erroneous ANR endorsement and Board’s failure to comply with G.L.c. 41, §81W, G.L.c. 83, §§21-23 and G.L.c. 40, §15 will adversely impact its water supply and infrastructure are sufficient to withstand the present motion to dismiss. See Gifford v. Planning Board of Nantucket, 376 Mass. 801, 802 (1978) (holding that 15 residents of a town had standing to challenge an ANR endorsement on other land in the town); Carey v. Planning Board of Revere, 335 Mass. 740, 743 (1957) (holding that the mortgagee of abutting property was “aggrieved” since violation of subdivision control law may depreciate the value of that property). Accordingly, the motion to dismiss Counts V and VI must be denied.
The Trust also moves to dismiss Count VII of the complaint on the ground that Randolph has no standing to seek a declaratory judgment that even if the ANR endorsement were proper,[16] the Land as shown on the plan is not a single “lot” under the Stoughton Zoning By-law, which contemplates that a “lot” will have no more than one boundary line fronting on a “street.” This claim, in contrast to Randolph’s challenge to the ANR endorsement itself, does not involve alleged noncompliance with the procedural requirements of the State Zoning Act. Rather, it is akin to a request for enforcement of Stoughton’s local by-law, which was presumably passed pursuant to the Zoning Act’s procedural requirements. Numerous sections of Chapter 40A require that notice of zoning actions be given to the planning boards of abutting cities and towns, thus recognizing that the property rights of such abutters may be seriously impacted by the manner in which a neighboring town utilizes its own land. It would be anomalous if Randolph were deemed able to protect its interests by participating in the passage of Stoughton’s by-law pursuant to the Zoning Act but were then deemed powerless to ensure that Stoughton enforces its validly passed by-law, where its failure to do so impacts the same property interests of Randolph as those protected by the Zoning Act. Randolph alleges that Stoughton’s treatment of the ANR Lot as a single “lot” in violation of its own local by-law will increase the density and intensity of the Land’s usage, resulting in adverse impacts on Randolph’s infrastructure and water supply. This is a sufficient allegation of aggrievement to withstand a motion to dismiss Count VII.
III. STOUGHTON REDEVELOPMENT AUTHORITY’S MOTION TO INTERVENE
The Stoughton Redevelopment Authority (SRA) moves to intervene in the present action pursuant to Mass.R.Civ.P. 24. Massachusetts Rule of Civil Procedure 24(a) provides that upon timely application, “anyone shall be permitted to intervene in an action: (1) when a statute of the Commonwealth confers an unconditional right to intervene or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action, and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.” Mass.R.Civ.P. 24(a). SRA does not claim a statutory right to intervene in the present action under 24(a)(1); rather, it contends that under 24(a)(2) it has an interest in the orderly continued development of the Stoughton Technology Center which must be protected. This Court will focus its inquiry on the adequacy of representation of SRA’s interests by the existing parties, since its conclusion on that issue eliminates the necessity of addressing the other requirements of Rule 24(a). See Massachusetts Federation of Teachers v. School Committee of Chelsea, 409 Mass. 203, 205 (1991).
It is well established that an applicant seeking to intervene bears the burden of showing the inadequacy of the representation of its interests by the existing parties to an action. Attorney General v. Brockton Agricultural Society, 390 Mass. 431, 434 (1983); Massachusetts Federation of Teachers v. School Committee of Chelsea, supra at 206. The weight of that burden may vary depending on the circumstances; however, where the interest of the applicant is identical to that of an existing party, a compelling showing is necessary *82 to demonstrate why this representation is not adequate. Attorney General v. Brockton Agricultural Society, supra at 435; Massachusetts Federation of Teachers v. School Committee of Chelsea, supra at 207. Factors which are relevant to the adequacy of representation include any adversity of interest between the applicant and existing parties, possible collusion between the existing parties, and a lack of diligence of existing parties in prosecuting or defending a claim. Attorney General v. Brockton Agricultural Society, supra at 435.
SRA contends that the cinema project is an appropriate and lawful development of the Center which is consistent with the Declaration and which has already been approved by all relevant zoning and planning boards in Stoughton. SRA thus moves to intervene as a defendant in the present action in order to protect its interest in having the cinema project go forward as approved. Even assuming that this is a specific and protectible interest within the meaning of Rule 24(a), it is clear that defendants Town of Stoughton, Stoughton ZBA and Stoughton Planning Board, as well as defendant Stoughton Route 24 Trust, have an identical interest in seeing the various zoning and planning decisions at issue affirmed and the project commenced. In fact, such arguments already have been presented to this Court by these other defendants.
SRA argues that as the public corporation charged with the Center’s development it has a special interest in continuing a decade’s worth of successful development of the Center, and that this special interest extends beyond its interest in the viability of the proposed cinema project. SRA thus claims that it should be allowed to intervene because of this special interest. This argument, however, is unavailing. The fact that the applicant and an existing party are motivated by somewhat different concerns in pursuing the same ultimate goal does not establish inadequate representation so long as the existing party demonstrates an intent to litigate vigorously. Massachusetts Federation of Teachers v. School Committee of Chelsea, supra at 208. In the present case, it is clear that the Town of Stoughton, ZBA and Planning Board share with SRA the ultimate goal of going forward with the cinema development and are prepared to litigate vigorously toward that end. This Court therefore concludes that SRA is not entitled to intervention as of right pursuant to Rule 24(a)(2). SRA’s interest is adequately represented by the existing parties.
Nonetheless, Rule 24(b) provides that upon timely application, “anyone may be permitted to intervene in an action: (1) when a statute of the Commonwealth confers a conditional right to intervene; or (2) when an. applicant’s claim or defense and the main action have a question of law or fact in common.” Mass.R.Civ.P. 24(b). Permissive intervention is wholly discretionary with the trial court. Corcoran v. Wigglesworth Machinery Co., 389 Mass. 1002, 1003 (1983); Massachusetts Federation of Teachers v. School Committee of Chelsea, supra at 209. In determining whether to allow such intervention, the court should consider the degree to which intervention threatens to complicate procedures, increase expenses and engender delays, and the possible prejudice to the adjudication of the rights of existing parties. Attorney General v. Brockton Agricultural Society, supra at 435; Massachusetts Federation of Teachers v. School Committee of Chelsea, supra at 209; Care and Protection of Zelda, 26 Mass.App.Ct. 869, 872 (1989). SRA’s claims present questions of fact and law in common with those of the other defendants and it does not appear that intervention by SRA would further delay and increase the complexity of the present case. Accordingly, this Court exercises its discretion to permit SRA to intervene under Rule 24(b)(2).
ORDER
For the foregoing reasons, it is hereby ORDERED that the Town of Randolph’s Motion to Amend is ALLOWED with respect to adding the Stoughton Planning Board as a plaintiff and adding a claim under G.L.c. 214, §7A, but DENIED in all other respects.
It is further ORDERED that Stoughton Route 24’s Motion to Dismiss is ALLOWED as to Count II of the complaint and DENIED as to all other counts. Finally, it is hereby ORDERED that Stoughton Redevelopment Authority’s motion to intervene in the present action is ALLOWED.

 As to these allegations, there is no difference between the original complaint and the amended complaint.

 The substance of the provisions of each statute referenced in Randolph’s complaint will be discussed in full in the sections of this decision relating to the individual counts.

 Specifically, the planning board of an abutting city or town is a party entitled to notice of zoning proceedings under G.L.c. 40A §5 which would enhance Randolph’s standing to bring Counts I and III of its complaint. In addition, insofar as the planning board of an abutting city or town is included in the definition of “parly in interest” contained in G.L.c. 40A, §11, Randolph’s Planning Board is presumed to have standing as a person aggrieved under c. 40A, §17 for purposes of Count IV of the complaint.

 In Freetown v. Zoning Board of Appeals of Dartmouth, 33 Mass.App.Ct. 415 (1992), the Dartmouth Zoning Board of Appeals granted a special permit to the Greater New Bedford Regional Refuse Management District. Claiming to be an aggrieved abutter, the neighboring town of Freetown appealed pursuant to c. 40A, §17. The Appeals Court affirmed the trial court’s dismissal of this cause of action on the ground that the District was a body politic of the Commonwealth and as such, was exempt from municipal zoning regulations in the absence of an express statute to the contrary. Id at 417-19. Thus, the Court adjudicated Freetown’s objections without any reference to the issue of the standing of one municipality to challenge the zoning of another municipality. Id. at 417, n.4.

 For a more detailed discussion of particular sections, see infra.

 This Court is cognizant that there are a few cases to the contrary. In New York, the rule is that a nonresident of a city is never an aggrieved person when property within city limits is permitted to be used for an objectionable use. Village of Russell Gardens v. Board of Zoning and Appeals of the Town of North Hempstead, 219 N.Y.S.2d 501, 502 (N.Y. Sup. Ct. 1961). Further, the early Illinois cases held that in the absence of express statutory authorization, a municipality lacked standing to challenge the zoning of land outside its borders. Mt. Prospect v. County of Cook, 252 N.E.2d 106, 111-12 (Ill.App. 1969); Arlington Heights v. County of Cook, 273 N.E.2d 706, 709 (Ill.App. 1971). However, in a more recent case, the Illinois Supreme Court held that one municipality could challenge the zoning of another so long as it demonstrated direct and substantial aggrievement. See Village of Barrington Hills v. Village of Hoffman, 410 N.E.2d 37 (Ill. 1980).

 It is noted that in Hallenborg, although the Court considered the notice requirements directory only, it ordered the Town to take further steps to correct its procedural defect. Although the Court reversed the Superior Court’s dismissal of the plaintiffs complaint, the ultimate outcome of the case was that the Court delayed the issuance of the relief sought (a writ of mandamus ordering the town clerk to strike the amendment at issue from the zoning by-law) for nine months so that the Town could either readopt the zoning amendment at issue in compliance with the statutory notice requirements or adopt an amendment protecting those who in good faith had relied on the defective amendment as properly passed. Id. at 520. As to the similar notice requirements of another section of Chapter 40A, see Gamache v. Acushnet, 14 Mass.App.Ct. 215, 219 (1982) (declinihg to invalidate a grant of a permit for noncompliance with the notice requirements of G.L.c. 40A, §17 where plaintiffs had actual notice of the hearing such that the defect in notice caused them no prejudice).

 See also Canton v. Bruno, 361 Mass. 598, 604 (1972), and Rayco Investment Corp. v. Board of Selectmen of Raynham, 368 Mass. 385, 394 (1975).

 Counts II and III of the complaint are discussed infra

 Notably, the few published decisions involving §17 appeals by municipalities as opposed to persons aggrieved involve municipal officers or boards of the municipaliiy whose zoning decision is being challenged. See Planning Board of Reading v. Board of Appeals of Reading, 333 Mass. 657 (1956); Carr v. Board of Appeals of Medford, supra; Planning Board of Springfield v. Board of Appeals of Springfield, 338 Mass. 160 (1958).

 The Overlay depicts wetlands areas that are regulated under Section III.E of the Stoughton Zoning By-law.

 Section III.E.3.h of the By-law allegedly permits wetlands of up to 4,500 square feet in size to be omitted from the map without formal map amendment in Industrial zoning districts, and wetlands of up to 10,000 square feet to be omitted without formal amendment in all other zoning districts.

 Section 81W sets forth the various steps that the planning board must follow in order to modify, amend or rescind a subdivision plan approval or to require a change in a plan.

 Pursuant to G.L.c. 40A, §6, “When a plan referred to in Section eighty-one of chapter forty-one has been submitted to a planning board and written notice of such submission has been given to the city or town clerk, use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan while such plan is being processed under the subdivision control law including the time required to pursue or await the determination of appeal referred to in said section, and for a period of three years from the date of endorsement by the planning board that approval under the subdivision control law is not required, or words of similar import.

 See the discussion, supra at 24-26.